**Opinion filed March 14, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00257-CV

_____

## IN THE INTEREST OF F.E.M., A CHILD

**On Appeal from the County Court at Law**

**Nolan County, Texas**

**Trial Court Cause No. CC-6415**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of F.E.M.'s mother and father. Both parents filed a notice of appeal. We affirm.

*Issues*

F.E.M.'s father presents eight issues for review, and F.E.M.'s mother presents six. In his first four issues, the father challenges the legal and factual sufficiency of the evidence to support the termination of his rights and the appointment of the Department of Family and Protective Services as the managing conservator. In his fifth issue, the father contends that the trial court abused its discretion in denying his pretrial motion for continuance. In his sixth issue, the father contends that he did not receive notice of the trial court's final hearing. In his seventh issue, the father asserts that the trial court was without jurisdiction at the final hearing because the dismissal date had expired. The father argues in his final issue that he received ineffective

assistance of counsel. The mother argues in her first issue that the trial court erred in failing to dismiss after it failed to set a dismissal date. In her second issue, the mother contends that the trial court abused its discretion in failing to grant her motion for continuance. In her third, fourth, and fifth issues, the mother challenges the legal and factual sufficiency of the evidence supporting the termination of her parental rights. In her final issue, the mother complains that she received ineffective assistance of counsel.

## Legal and Factual Sufficiency

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001.

### A. Acts of F.E.M.'s Father

In this case, the trial court found that the father had committed two of the acts listed in Section 161.001(1): constructive abandonment pursuant to Section 161.001(1)(N) and failing to comply with the necessary provision of a court order pursuant to Section 161.001(1)(O). Specifically, the trial court determined that the father had constructively abandoned F.E.M. because F.E.M. had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and (1) the Department or authorized agency had made reasonable efforts to return F.E.M. to the father, (2) the father had not regularly visited or maintained significant contact with F.E.M., and (3) the father had demonstrated an inability to provide F.E.M. with a safe environment. *See id.* § 161.001(1)(N). The trial court also determined that the father had failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of F.E.M., who had been in the managing conservatorship of

2

the Department for not less than nine months as a result of the child's removal from the parent for abuse or neglect. *See id.* § 161.001(1)(O). The trial court found that termination of the father's rights was in the best interest F.E.M. *See id.* § 161.001(2). The father challenges these findings as well as the trial court appointment of the Department as F.E.M.'s managing conservator.

In his first issue, the father challenges the sufficiency of the evidence regarding the trial court's finding of constructive abandonment. To support termination for constructive abandonment under Section 161.001(1)(N), it must be shown that the Department or an authorized agency had been the managing conservator of the child for not less than six months, that the Department or authorized agency had made reasonable efforts to return the child, that the parent had not regularly visited or maintained significant contact with the child, and that the parent had demonstrated an inability to provide the child with a safe environment. The father specifically challenges each of the elements under this subsection.

F.E.M. was born in July 2011. She had been under the managing conservatorship of the Department since July 22, 2011. F.E.M. was initially placed in a foster home when she left the hospital, but was returned to both parents (who resided together) for a monitored return on August 9, 2011. During the monitored return, F.E.M. remained in the temporary managing conservatorship of the Department. F.E.M. was removed from the monitored return and placed in foster care on January 25, 2012, after the mother tested positive for cocaine. The final hearing in this case commenced on July 17, 2012. The father visited F.E.M. only five times out of the twenty-two to twenty-four times that were available to him for visitation. All five of these visits were made with the mother; the father made no visits on his own initiative. Thus, the father failed to regularly visit or maintain significant contact with F.E.M. while she was in the Department's care. Evidence was introduced indicating that the Department made reasonable efforts to work with the father, including a monitored return. The father, however, failed to keep the Department apprised of his whereabouts after the monitored return and had no contact with his caseworker after December 2011. There was also evidence that the father demonstrated an inability to provide F.E.M. with a safe environment.

The trial court's finding under Section 161.001(1)(N) as to the father is supported by the record. The father's first issue is overruled. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not

address the father's second issue regarding the sufficiency of the evidence to support the trial court's finding under Section 161.001(1)(O). *See* TEX. R. APP. P. 47.1.

## B. Acts of F.E.M.'s Mother

The trial court found that termination of the mother's parental rights would be in the best interest of F.E.M. and that the mother had committed two of the acts listed in Section 161.001(1): knowingly placing or allowing the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child as set out in Section 161.001(1)(D) and failing to comply with the necessary provisions of a court order pursuant to Section 161.001(1)(O). Because we hold that the evidence is sufficient to support the trial court's finding under Section 161.001(1)(O), we do not address the mother's third issue relating to Section 161.001(1)(D). *Id.*

In her fourth issue, the mother challenges the legal and factual sufficiency of the evidence in support of the finding that she failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of F.E.M. *See* Section 161.001(1)(O). Section 161.001(1)(O) provides that a court may terminate the parent-child relationship if the parent:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

The Department's caseworker, Don Meador, testified extensively about the mother's failure to comply with her family service plan, and the mother does not assert in this issue that she did comply with the court-ordered provisions. Instead, she specifically asserts that the evidence is insufficient to show that F.E.M. had been removed as a result of "abuse or neglect."

The record shows that F.E.M. was originally removed based upon positive drug tests performed on the mother and F.E.M. shortly after F.E.M. was born. F.E.M. was removed from the monitored return after the mother tested positive for cocaine. Additionally, at the time of removal from the monitored return, F.E.M. required medical attention, which the parents had not sought. The evidence is sufficient to show that F.E.M. had been removed from the mother due to abuse or neglect. The mother's fourth issue is overruled.

4

*C. Best Interest of F.E.M.*

In the father's third issue and the mother's fifth issue, they argue that the evidence is legally and factually insufficient to support the trial court's finding that termination of their parental rights is in F.E.M.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

Meador gave extensive testimony at trial that supports the trial court's best interest finding. The Department originally became involved with F.E.M. at the hospital shortly after her birth, when both she and the mother tested positive for marihuana and the mother also tested positive for benzodiazepine. The mother admitted that she smoked marihuana and took some sort of "pill" knowing that she was pregnant. Meador testified that the parents' house was not a safe place for F.E.M. based upon the domestic violence that occurred in the house and upon the alcohol and drug use. The parents had a history of family violence, and the father had a criminal history that included a conviction for aggravated assault with a deadly weapon for stabbing someone with a knife. According to the mother, the father had physically assaulted her multiple times. On December 19, during the monitored return, the mother and F.E.M. went to a battered women's shelter because the father assaulted, or "beat," the mother. The mother, however, was asked to leave the shelter because she broke curfew; she returned to live with the father. F.E.M. was removed from the monitored return when the mother tested positive for cocaine. Additionally, when F.E.M. was removed from the monitored return, she required medical attention that the parents had not sought. She had a yeast infection, a diaper rash that required

antibiotics, and a condition known as wryneck that caused her neck to be bent so that her ear was basically on her shoulder.

Neither parent completed the family service plan. Both parents failed to attend the required family and individual counseling, quitting "early on." The father failed to take an anger management class and continued to have issues with drinking alcoholic beverages, including an arrest for public intoxication. The mother failed to participate in individual therapy, failed to continue random drug monitoring, refused drug tests, and tested positive for cocaine during the pendency of this case. The parents failed to attend AA/NA as required and also failed to maintain stable employment. During the monitored return with her parents, F.E.M. resided in four different locations.

At the time of trial, the mother was forty-one years old and had ten children, none of whom lived with her. Three of the mother's children were older; five were in the custody of Oklahoma CPS; and two children, including F.E.M., were under the Department's care. The father, who was twenty-four years old at the time of trial, had no children other than F.E.M. The father failed to maintain significant contact with F.E.M., and the mother had not visited F.E.M. in over a month at the time of trial. Sometimes the mother arrived late or left early. According to Meador, the mother's visits with F.E.M. were not always appropriate. When F.E.M. cried, the mother had difficulty consoling her and passed her off to the supervisor of the visit for help.

Meador testified that the Department's goal for F.E.M. was adoption, that F.E.M. was very adoptable, and that her current foster parents wanted to adopt her. Meador was also of the opinion that termination of both parents' rights would be in F.E.M.'s best interest. Meador testified that F.E.M. is an adorable little girl with a wonderful smile. At the time of trial, F.E.M. was not quite walking yet; was babbling but not talking; and was very happy in her current foster placement, where she had been for two and one-half months.

Based on the evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction that termination of both the father's and the mother's parental rights would be in the best interest of F.E.M. We cannot hold that the findings as to best interest are not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the findings that termination of the father's and the mother's parental rights is in the best interest of F.E.M. The father's third issue and the mother's fifth issue are overruled.

### D. Appointment of Managing Conservator

In his fourth issue, the father argues that the evidence is legally and factually insufficient to establish that the Department should remain F.E.M.'s permanent managing conservator. We disagree. The findings necessary to appoint a nonparent as sole managing conservator need only be established by a preponderance of the evidence. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). Consequently, we review a trial court's conservatorship decision under a less stringent standard of review than the standard for termination. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A conservatorship determination is subject to review for an abuse of discretion and may be reversed only if that determination was arbitrary and unreasonable. *Id.* The record shows that the Department's goal for F.E.M. was adoption, that her current foster parents wanted to adopt her, that she was very happy and was thriving in their care, and that neither the mother nor the father had offered any suitable alternatives for placement. The father's fourth issue is overruled.

### Motion for Continuance

In the father's fifth issue and in the mother's second issue, the parents contend that the trial court abused its discretion in failing to grant a pretrial continuance so that they could be present for the final hearing. We disagree.

On July 16, 2012, which was the date that trial was supposed to commence, the parents' attorneys were present, but neither parent appeared for trial. The father's attorney requested a continuance to locate the father because, although he had diligently attempted to contact the father, he had been unsuccessful in doing so at any known address or phone number. Counsel sent the notice to the father's father, who said he would make sure that the father got the notice. Likewise, the mother's attorney filed a motion for continuance, stating that he had received a text from the mother stating that she was out of town and was unable to be present for court as she did not have funds available for the trip. The mother had informed counsel that she was in a small town outside of San Antonio. The only way counsel was able to communicate with the mother was via text message. The trial court instructed the mother's counsel and Meador to contact the mother and find out if she needed financial assistance in coming to trial. The trial court granted a one-day continuance and offered to make funds immediately available for a bus ticket for the mother. The Department also offered to provide transportation, even if "somebody [had] to drive and pick her up."

7

The next day on July 17, neither parent appeared for trial. The father's attorney announced not ready. The mother's attorney filed a verified motion for continuance stating that a continuance was necessary to secure the attendance of the mother, who was a material witness, and that due diligence had been exercised. The record shows that the Department's caseworker and the mother's attorney had notified the mother by text message on July 16 that funds were available to pay for her trip. However, the mother did not respond to those text messages. The trial court denied the motion for continuance.

The trial court did not abuse its discretion in refusing to grant another continuance. The father did not file a written, verified motion for continuance and did not show sufficient cause supported by an affidavit as required by TEX. R. CIV. P. 251. The mother's written, verified motion was not supported by an affidavit as required by TEX. R. CIV. P. 251 and 252. Because the parents failed to comply with Rule 251 and Rule 252, we presume that the trial court did not abuse its discretion in denying their motions. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). Additionally, the mere absence of a party does not entitle him to a continuance; the party must show a reasonable excuse for his absence. *Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.— Corpus Christi 2003, no pet.); *Vickery v. Vickery*, No. 01-94-01004-CV, 1997 WL 751995, at *20 (Tex. App.—Houston [1st Dist.] Dec. 4, 1997, pet. denied) (not designated for publication). Neither parent provided a reasonable excuse in this case; the trial court could have determined that the parents voluntarily absented themselves from trial.[1] We note that the trial in this case took two days, commencing on July 17 and concluding on July 18, and that the parents were not present on either day. We hold that sufficient cause for a continuance was not shown and that the trial court did not abuse its discretion in denying the parents' motions for continuance. The father's fifth issue and the mother's second issue are overruled.

*Father's Notice of Trial*

In his sixth issue, the father contends that he did not receive notice of the final trial. This contention is without merit. The record shows that the failure, if any, of the father to receive actual notice of the trial setting was his own fault. The father's attorney diligently attempted to personally notify the father, who failed to keep in contact with his attorney and failed to notify

---

[1]We note that both parents also failed to attend the January 30, 2012 hearing regarding removal from the monitored return and that the hearing was reset due to their absence. The mother had notice of the January 30 hearing, and her attorney expected her to be present. The father's attorney could not locate the father, but he had left a message with the father's relative. The father also failed to attend the permanency hearing on May 7, 2012.

his attorney of his whereabouts and his contact information. The father's attorney ultimately sent notice to the father's father, who agreed to deliver the notice. Counsel was informed by two of the father's relatives that the father was aware of the trial setting and was going to be present for trial on July 17. Furthermore, the father's attorney had received notice and was present for the trial. *See* TEX. R. CIV. P. 8, 21a. Counsel's knowledge of a trial setting is imputed to his client. *In re G.N.M.*, No. 04-10-00729-CV, 2011 WL 1044407 (Tex. App.—San Antonio Mar. 23, 2011, pet. denied). The father's sixth issue is overruled.

*Dismissal Date*

Both parents assert error regarding the mandatory dismissal date addressed in TEX. FAM. CODE ANN. § 263.403 (West 2008). In his seventh issue, the father contends that the trial court lacked jurisdiction because the dismissal date had expired. In her first issue, the mother contends that the trial court erred in failing to dismiss this case after it failed to enter a written order setting a dismissal date when F.E.M. was removed from the monitored return.

With respect to the father's complaint, a trial court does not lose jurisdiction over a termination proceeding when the dismissal date passes; the dismissal dates are not jurisdictional. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009). Furthermore, a party who fails to "make a timely motion to dismiss" prior to the commencement of the trial in this type of case waives the right to object to the trial court's failure to dismiss the suit. TEX. FAM. CODE ANN. § 263.402(b) (West 2008). The record shows that the father filed his motion to dismiss on September 25, 2012, and that the mother filed her motion to dismiss on October 4, 2012. Both motions were untimely as they were filed after the order of termination and more than two months after the trial commenced. Therefore, both parents waived the right to object to any failure of the trial court to dismiss this suit based upon the mandatory dismissal date.

Moreover, the record does not support the parents' contentions. The dismissal date had not lapsed in this case. The original dismissal date in this case was July 23, 2012. *See id.* § 263.401. Pursuant to Section 263.403(b)(2), upon entering an order granting the monitored return of F.E.M. to the parents, the trial court scheduled a new, appropriate dismissal date of February 5, 2012. However, F.E.M. was removed from the monitored return effective January 25, 2012. At a January 30 hearing, the dismissal date of July 23, 2012, was discussed by the parties' attorneys, as that date was determined by them to be 180 days from the date F.E.M. was returned to foster care. During that hearing and in open court, the trial court "extend[ed] the

deadline by the six-month period that's permitted" upon removal from a monitored return. The trial court thus complied with Section 263.403(c), which does not require that the dismissal date be included in a written order entered at the time of removal but, rather, that the trial court "shall, at the time of the move, schedule a new date for dismissal." We note that, on March 5, 2012, the trial court entered a written order indicating that July 23 was the dismissal date. Trial commenced on July 17, 2012, before the dismissal date. We overrule the father's seventh issue and the mother's first issue.

### Ineffective Assistance of Counsel

In both parents' final issue, they complain that their trial counsel rendered ineffective assistance of counsel. A parent in a termination case has the right to "effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). To prevail on a claim of ineffective assistance of counsel, a parent must show that trial counsel's performance was deficient and that the deficient performance was so serious as to deny the parent a fair and reliable trial. *In re J.O.A.*, 283 S.W.3d 336, 341–42 (Tex. 2009) (following the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668 (1984)).

The father specifically asserts that counsel was deficient in (1) failing to object to the Department's request that the trial court take judicial notice of the contents of the trial court's file, (2) failing to timely object to the jurisdiction of the court, and (3) failing to bring to the trial court's attention that the father did not have a court-ordered service plan. First, a trial court may take judicial notice of the contents of its file, but may not take judicial notice of the truth of any factual allegations contained in its file. *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.). Nothing in the record indicates that the trial court took judicial notice of the truth of any disputed matter contained in its file or that it was requested to do so. Thus, trial counsel was not deficient in failing to object. Second, as discussed above, the trial court had jurisdiction to hear this case; further, trial was commenced prior to the dismissal deadline. Thus, even a timely objection or motion to dismiss would not have had merit. Third, the record shows that a family service plan had been instituted for both parents. The mother signed the plan on August 29, 2011, and a copy containing her signature was filed with the trial court that same day. A note on the plan indicates that the father refused to sign the plan until he had conferred with his attorney. The father subsequently signed the plan in September, and a copy of the service plan containing both parents' signatures was filed in the trial court on September 14, 2011.

These plans are exact copies of each other with the exception of the father's signature. The trial court subsequently signed an order incorporating "the plan of service for the parents, filed with the Court on August 29, 2011." Although the father had not signed that copy of the service plan, its terms applied to him. Furthermore, the trial court instructed the father at the adversary hearing on August 9, 2011, regarding the court's orders, which included submitting to a hair follicle test within ten days; continued urinalysis tests every three days; and participation in anger management courses, parenting classes, a psychological evaluation, and a drug and alcohol assessment. Meador's testimony also indicated that the family service plan was court ordered and that both parents were present at the family group conference that resulted in the service plan. We cannot hold that the father's attorney rendered ineffective assistance of counsel by failing to notify the trial court that the father had no court-ordered service plan. The father's eighth issue is overruled.

The mother contends that her counsel was deficient for failing to ensure that the mother received timely notice of the trial date, failing to ensure that she would be able to appear at trial, failing to send discovery requests in a timely manner, failing to timely file a motion to dismiss, and failing to file a sufficient motion for continuance. The record does not support these contentions. The record shows that the mother had timely notice of the trial date but that she failed to attend despite the efforts of her attorney and the trial court. As discussed above, this case was not subject to dismissal because the trial court complied with the statutes regarding the setting of mandatory dismissal deadlines and because trial was commenced prior to the appropriate deadline. Finally, any failure of counsel with respect to the motion for continuance was due to the mother's inability or unwillingness to be present for trial and her failure to notify her counsel of such in a timely manner. Furthermore, even if the motion for continuance had been supported by an affidavit, it would have been within the trial court's discretion to deny the motion for lack of sufficient cause based upon the mother's actions and the impending mandatory dismissal date.

With respect to the discovery requests, the mother asserts that trial counsel failed to seek discovery about witnesses and experts until after it was too late to do so. The record from July 16 reflects that, although the mother's trial counsel filed an untimely request for discovery, he had received "pretty close to 1500 pages of documents" from the Department. The mother's attorney specifically complained that he had not received a "194 response" or "the drug testing

protocol." There is nothing in the record to indicate that the Department was in possession of "the drug testing protocol"; the Department had provided documents regarding the results of the parents' drug tests, but not the protocol for that testing. On July 17, the mother's attorney announced that he had met with the Department's attorney after the July 16 hearing and that she had "provided [him] with all of the discovery that [he had] asked for." Even assuming that trial counsel was deficient in filing an untimely discovery request, the mother has not shown that she was prejudiced—denied a fair and reliable trial—by this alleged deficiency. The mother's sixth issue is overruled.

The trial court's order of termination is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


March 14, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.