

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00058-CV

In the **INTEREST OF S.A.C.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-00376
Honorable Charles Montemayor, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  May 22, 2013

AFFIRMED

This is an appeal from a trial court's order terminating appellant A.A.M's parental rights

to S.A.C., a minor child.[1]  A.A.M. contends the trial court erred in terminating her parental rights

because the evidence is legally and factually insufficient to support the trial court's findings that:

(1) A.A.M. constructively abandoned S.A.C., and (2) termination was in S.A.C.'s best interest.

We affirm the trial court's judgment.

### BACKGROUND

The appellate record shows A.A.M. has an extended history with the Texas Department

of Family and Protective Services ("the Department").  A.A.M. has been actively under

---

[1] To protect the privacy of the parties in this case, we identify the child and the child's mother by their initials only. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2012).

investigation or receiving services from the Department since 1996. The referrals to the Department include claims of negligent supervision and physical abuse and neglect.

On December 29, 2011, the Department received a referral alleging neglectful supervision of a minor child, S.A.C. After an investigation, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination, seeking to terminate A.A.M.'s parental rights. The trial court awarded temporary custody of S.A.C. to the Department until a full adversary hearing was held. After an adversary hearing, the trial court ordered A.A.M.'s service plan waived[2] and that the Department maintain temporary managing conservatorship of S.A.C.

Following several status and permanency hearings, a bench trial was set for January 7, 2013. A.A.M.'s trial counsel announced not ready. She stated A.A.M. was not present and she had not spoken to A.A.M. since the last permanency hearing. The trial proceeded and only one witness testified, the Department's caseworker Lenore Cisneros Salazar. She testified about the history of the case and her communications with A.A.M. Salazar testified, among other things, that A.A.M. was aware of the trial date; it was announced at the August permanency hearing when A.A.M. was present.

After hearing the evidence, the trial court terminated A.A.M.'s parental rights to S.A.C., finding A.A.M. constructively abandoned S.A.C. and the Department made reasonable efforts to return S.A.C. to A.A.M. The trial court also found termination would be in S.A.C.'s best interest. After the trial court signed the judgment of termination, A.A.M. was appointed appellate counsel who perfected this appeal.[3]

---

[2] As will be discussed later in this opinion, it appears from the record that the trial court waived A.A.M.'s service plan pursuant to section 262.0215 of the Texas Family Code.
[3] The trial court also terminated the parental rights of S.A.C.'s father, but he is not a part of this appeal.

**ANALYSIS**

On appeal, A.A.M. challenges the legal and factual sufficiency of the evidence to support the trial court's findings relating to termination. Specifically, A.A.M. contends there is insufficient evidence to establish (1) she constructively abandoned S.A.C., and (2) termination was in S.A.C.'s best interest. The Department counters by arguing the evidence is both legally and factually sufficient to support both findings.

### *Standard of Review*

Parental rights may be terminated only upon proof by clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). Clear and convincing evidence is proof that will produce a firm belief or conviction in the mind of the fact finder that the allegations sought to be established are true. TEX. FAM. CODE ANN. § 101.007 (West 2008); *see also In re J.O.A.*, 283 S.W.3d at 344; *In re E.A.G.*, 373 S.W.3d at 140. This heightened standard is required by due process because termination results in permanent and irrevocable changes for the parent and the child. *In re E.A.G.*, 373 S.W.3d at 140. Under the clear and convincing standard, we ask whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In evaluating the evidence for legal sufficiency in parental termination cases, we review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any

disputed facts in favor of the finding if a reasonable fact finder could have done so. *Id.* We disregard all evidence that a reasonable fact finder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the fact finder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the fact finder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the fact finder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If in light of the entire record, we find a reasonable fact finder could not have decided in favor of the finding or could not have reasonably formed a firm belief or conviction in the truth of the finding, then the evidence is factually insufficient. *Id.*

### *Constructive Abandonment*

In this case, the trial court terminated A.A.M.'s parental rights to S.A.C. based on constructive abandonment. *See* TEX. FAM. CODE § 161.001(1)(N). A trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has:

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:
>
> (i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment ...

*Id.*

Here, A.A.M. challenges the sufficiency of the evidence only with respect to the first prong, i.e., whether the Department made reasonable efforts to return the child to her family. A.A.M. argues that although the service plan was waived, the Department did not provide any further evidence to support reasonable efforts to return S.A.C. *See id.* We disagree.

During an April 4, 2012 hearing, the trial court waived A.A.M.'s service plan. The trial court noted A.A.M. had two previous terminations for violations of Sections 161.001(1)(D) and (E) of the Code, which are aggravated circumstances that allow the trial court to waive a service plan.[4] *See* TEX. FAM. CODE § 262.2015(b)(5) (noting trial court may waive requirement of service plan if parent's rights with regard to another child have been involuntarily terminated based on finding that parent's conduct violated Section 161.001(1)(D) or (E)). Despite the waiver, the trial court ordered the Department assist A.A.M. in obtaining therapy. Caseworker Salazar testified that in August 2012, the Department provided A.A.M. with a list of services and providers A.A.M. could use. Thus, although the Department did not implement a formal service plan for A.A.M. due to the waiver, it did provide A.A.M. with therapy and parenting services for her to attend.

Salazar testified that in December 2012, she spoke to A.A.M. and asked her if she had been attending parenting classes or therapy. A.A.M. informed Salazar she had taken parenting

---

[4] Generally, implementation of a family service plan by the Department is considered a reasonable effort to return a child to its parent. *In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (noting only that there was evidence of service plans); *In the Int. of M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (noting five service plans were prepared for father, and State made special arrangements for father to have parenting classes in nearby town).

classes, but did not relay the name or location of the program. Furthermore, Salazar testified A.A.M. talked to her about the possibility of relinquishing her rights to S.A.C. A.A.M. also told Salazar she was diagnosed with bipolar disorder, but did not believe this mental health diagnosis was correct, and she refused to take any medication or attend therapy.

Moreover, in August 2012, the Department arranged for A.A.M. to visit S.A.C. However, A.A.M. failed to complete the drug screen required for visitation. A.A.M. did not complete her drug screening for purposes of visitation until October 2012. This October 2012 was the only time that A.A.M. visited S.A.C. after the Department removed S.A.C.

Finally, the trial court found the Department had made reasonable efforts to return S.A.C throughout the case, as noted in several status and pendency hearing orders. *See In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012) (finding trial court may take judicial notice of previous orders and findings of fact from same case and need not affirmatively state so on record to rely on them in its later judgment). For example, in an order from April 2012, the trial court noted the Department made reasonable efforts "to make it possible for [S.A.C.] to return home, but … continuation in the home would be contrary to the welfare of [S.A.C.]." Similarly, in orders from August 2012 and January 2013, the trial court stated the Department made reasonable efforts to "finalize the permanency plan … for [S.A.C.]" and "identify relatives who could provide the child with a safe environment."

After considering the evidence set forth above, as well as the rest of the evidence in the record, we hold the trial court could have reasonably formed a firm belief or conviction that A.A.M. constructively abandoned S.A.C. and that the Department made reasonable efforts to return S.A.C. *See* TEX. FAM. CODE § 161.001(N); *In re J.O.A.*, 283 S.W.3d at 344; *In re E.A.G.*, 373 S.W.3d at 140. Accordingly, we overrule A.A.M.'s first issue.

### *Best Interest of Child*

A.A.M. next contends there is insufficient evidence to establish termination was in S.A.C.'s best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). It is well-established that the primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A.A.M. argues that although some evidence "touched" on a few of the *Holley* factors, there was evidence lacking for most of the other factors. However, these factors are not exhaustive and need not all be proved as a condition precedent to termination. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence about some of the *Holley* factors does not

preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, although it is true that proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

The Department's involvement in this case started when A.A.M. attempted to place S.A.C. for adoption. A.A.M. later informed the Department she intended to sell S.A.C. Since losing custody of S.A.C. in February 2012, A.A.M. made a single visit to see S.A.C. in October 2012. When Salazar last spoke to A.A.M. in December 2012, A.A.M. still wished to relinquish her parental rights to S.A.C. In fact, A.A.M. told Salazar she wanted to give up parental rights to her unborn child as well, stating that if she could not take care for S.A.C., she could not care for another child.

Salazar testified A.A.M. told her she was diagnosed with bipolar disorder and depression, but A.A.M. refused to take any medication or attend therapy for it because she did not believe the diagnosis was correct. Salazar testified she was concerned about A.A.M.'s behavior, specifically A.A.M. had anger and mood swing issues that became evident in the courtroom during previous hearings and at the Department's office. These allegations are substantiated in the record in trial court's notes from previous hearings, which state A.A.M. was "aggressive" toward court staff, CPS workers, and her own attorneys. Salazar also testified A.A.M. had severe mental health issues, as exhibited by the fact A.A.M. stated she had contact with positions of power, such as President Barack Obama, who would intervene on her behalf in this case.

Although not under a court-ordered service plan, the record reflects A.A.M. took no affirmative action to regain custody or better her situation. *See In re M.R.*, 243 S.W.3d 807, 821

(Tex. App.—Fort Worth 2007, no pet.) (stating parent's noncompliance with service plan may affect factfinder's consideration of child's best interest). A.A.M. told Salazar she was attending parenting classes, but despite requests, did not provide any details to allow Salazar to verify this information.

Also, there is evidence in the record that A.A.M. failed to regularly visit or maintain significant contact with S.A.C. and to demonstrate an ability to provide S.A.C. with a safe environment. *See* TEX. FAM. CODE § 161.001(1)(N). These statutory factors for termination are also evidence that termination of A.A.M.'s parental rights are in the best interest of S.A.C. *See In re C.H.*, 89 S.W.3d at 27 (finding undisputed evidence of one factor may be sufficient in particular case to support finding that termination is in best interest of child).

Salazar testified S.A.C. has been in foster care since February 2012, and that her foster parents expressed a desire to adopt S.A.C. and were open to adopt A.A.M.'s unborn child. In addition, the trial court was aware of A.A.M.'s prior history with the Department and could have taken it into consideration when deciding S.A.C.'s best interest. *See In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.) (noting trial court may measure parent's future conduct by her past conduct and determine it is in child's best interest to terminate parental rights).

Therefore, after considering the evidence, the *Holley* factors, the undisputed acts or omissions under section 161.001(1) of the Code, and the applicable standards of review, we hold there is legally and factually sufficient evidence to support the trial court's determination that termination of A.A.M.'s parental rights was in S.A.C.'s best interest. Under the clear and convincing standard, we hold the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in the best interest of the child. *See In re J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

Based on the foregoing, we overrule A.A.M.'s issues and affirm the trial court's judgment.

Marialyn Barnard, Justice