Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-12-00110-CV

**IN THE INTEREST OF J.E.H.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2010-PA-02116
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
  Steven C. Hilbig, Justice
  Marialyn Barnard, Justice

Delivered and Filed:  October 3, 2012

REVERSED AND REMANDED IN PART; AFFIRMED IN PART

Appellant Clifton B. appeals the trial court's judgment terminating his parental rights to his son J.E.H. On appeal, Clifton B. argues that the evidence was legally and factually insufficient to support termination of his parental rights. Because we conclude the evidence was insufficient, with respect to Clifton B., we reverse the trial court's order of termination and remand the cause for a new trial. In all other respects, we affirm the trial court's order of termination.[1]

---

[1] We note that the underlying case involved four children: S.H., T.H., J.H., and J.E.H. Clifton B. is the father of J.E.H. The three other children, S.H., T.H., and J.H., have a different father, Mason W. Mason W. has not appealed the trial court's judgment terminating his parental rights to S.H., T.H., and J.H.

**BACKGROUND**

On September 27, 2010, the Department of Family and Protective Services ("the Department") filed an original petition for protection of a child, for conservatorship, and for termination of parental rights. In an affidavit attached to the petition, Elayne Mitsui, an employee with the Department, affirmed that on December 22, 2009, the Department had received a referral that Clifton B. had been driving under the influence of marijuana while transporting his son, J.E.H. Mitsui affirmed that Clifton B. had been arrested and was incarcerated. Her affidavit also stated that the case involving J.E.H. had been open since January 23, 2010, and that J.E.H.'s mother passed away on February 16, 2010. Mitsui stated that although the Department had attempted to work with Clifton B. by providing services to reduce the risks identified in its investigation, there had been no significant progress.

On November 17, 2011, the bench trial began, and Clifton B. testified. Because of other court matters, the trial court called a recess and did not continue the trial until January 20, 2012. On January 20, 2012, the State called only one witness, Clifton B. Clifton B. called only one witness, his sister Bridget B., who testified that Clifton was a "good" dad. No caseworker was called to testify and no other evidence was admitted. In its closing argument, the Department's attorney referred to testimony of the caseworker from the first day of trial in November 2011: "And there was testimony on the first day of trial when the case worker testified that there [were] several attempts to set up that psychological evaluation, Your Honor." However, there was no such testimony from the caseworker. It appears that the long recess caused confusion among the attorneys and the trial court as to what evidence had been presented. It is apparent from the record, however, that the only evidence presented at trial was the testimony of Clifton B. and his sister. Given the state of the record, Clifton B. argues the following on appeal: (1) the evidence is

legally and factually insufficient to support termination on "service plan" grounds pursuant to section 161.001(1)(O) of the Texas Family Code; (2) the evidence is legally and factually insufficient to support termination on "relapse after drug treatment" grounds pursuant to section 161.001(1)(P); and (3) the evidence is legally and factually insufficient to support the trial court's finding that termination was in J.E.H.'s best interest pursuant to section 161.001(2).

## STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a belief or conviction that there existed grounds for termination under section 161.001(1) and that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In doing so, we examine all the evidence in the light most favorable to the finding, assuming that the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* We must also disregard all evidence that the factfinder could have reasonably believed or found to be incredible. *Id.* However, we must not disregard all the evidence that does not support the finding, as doing so could "skew the analysis of whether there is clear and convincing evidence." *Id.*

When conducting a factual sufficiency review of the evidence in a termination of parental rights case, we examine the entire record to determine whether "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the two prongs of section 161.001 were met. *Id.* If the evidence that could not be credited in favor of the finding is so great that it would prevent a reasonable factfinder from forming a firm belief or conviction

that the two prongs under section 161.011 were met, then the evidence is factually insufficient and the termination will be reversed. *Id.*

## DISCUSSION

Before Clifton B.'s parental rights could be terminated under section 161.001 of the Family Code, the Department had the burden of establishing that Clifton B. engaged in conduct enumerated in one or more of the subsections of section 161.001(1) and that termination of the parent-child relationship was in J.E.H.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination if there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Here, Clifton B.'s parental rights were terminated pursuant to section 161.001(1)'s "O" grounds and "P" grounds.

Section 161.001(1) provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; . . .

> (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and
>> (i) failed to complete a court-ordered substance abuse treatment program; or
>> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance; . . . and

(2) that termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O)-(P), (2) (West Supp. 2012).

With respect to termination on "O" grounds, Clifton B. argues that there is insufficient evidence to support a finding that (1) J.E.H. had been in the State's care for the requisite nine months; (2) J.E.H. had been removed from Clifton B.'s care for abuse or neglect; and (3) Clifton B. had failed to comply with a court order that specifically established the actions necessary for him to obtain the return of his child. With respect to termination on "P" grounds, Clifton B. argues that there is insufficient evidence to support a finding that (1) Clifton B. used a controlled substance in a manner that endangered the health or safety of J.E.H.; and (2) Clifton B. continued to abuse a controlled substance *after* successful completion of drug treatment.

We first note that the Department, in arguing the evidence is sufficient to support the trial court's judgment, points to various documents contained in the clerk's record. However, none of these documents contained within the trial court's file was introduced in evidence at trial. Thus, we assume the Department, by citing to portions of the clerk's record as evidence in support of the judgment, is arguing that the trial court took judicial notice of its file. Because a "trial court is presumed to judicially know what has previously taken place in the case tried before it," "the parties are not required to prove facts that a trial court judicially knows." *In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Thus, this court has held that when the record is silent, as here, the trial court may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so. *In re H.S.V.*, No. 04-12-00150-CV, 2012 WL 3597211, at *5 (Tex. App.—San Antonio Aug. 22, 2012, pet. filed); *In re S.J.S.*, No. 04-12-00067-CV, 2012 WL 2450817, at *6 (Tex. App.—San Antonio June 27, 2012, pet. filed); *In re*

*A.X.A.*, No. 04-09-00519-CV, 2009 WL 5150068, at \*4 n.3 (Tex. App.—San Antonio 2009, no pet.).

A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed. *Trimble v. Tex. Dep't of Protective & Regulatory Servs.*, 981 S.W.2d 211, 215 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ). "That is, a court may take judicial notice that a pleading has been filed in the cause, or of the law of another jurisdiction." *Tschirhart*, 876 S.W.2d at 508 (citations omitted); *see In re J.J.C.*, 302 S.W.3d at 446. "A court may not, however, take judicial notice of the *truth* of allegations in its records." *Tschirhart*, 876 S.W.2d at 508 (emphasis in original). Thus, in this case, the trial court could properly take judicial notice that it signed an order adopting the family service plan and what the plan listed as the necessary requirements Clifton B. was required to complete before J.E.H. would be returned to him. *See In re H.S.V.*, 2012 WL 3597211, at \* 5 (holding that "the trial court could consider the family service plan, and order adopting same, as evidence of what appellant was required to do to get her children back"). However, the trial court could not take judicial notice of the allegations the caseworker made in the family service plan. *See Tschirhart*, 876 S.W.2d at 508.

We note that to terminate Clifton B.'s parental rights on "O" grounds, the State had the burden of proving that J.E.H. had been removed from Clifton B.'s care for abuse or neglect. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012). The Department claims that the evidence shows J.E.H. was removed from Clifton B.'s care because he was driving a car under the influence of marijuana with J.E.H. as a passenger. In support, the Department cites to (1) Mitsui's affidavit, which was attached to the Department's original petition seeking termination;

and (2) a family service plan that includes the following statement: "On December 22, 2009, the Department . . . received a referral that Mr. Clifton [B.], father of [J.E.H.], was driving under the influence of marijuana while transporting his son." As explained, the trial court could not take judicial notice of either the affidavit or the allegations made in the family service plan. Thus, neither the affidavit nor the allegations contained in the family service plan can support the judgment.

The Department also points to the following testimony of Clifton B.:

Q: Now, do you understand why your child came into care?
A: Yes.
Q: And why is that?
A: This is – I mean, it was like a wrong choice at one point in time. A wrong choice. I didn't know better.
Q: Okay. And what was that wrong choice?
A: Staying out late.
Q: Okay. And did that wrong choice have anything to do with drugs?
A: No, it didn't.

Clifton B.'s testimony that his children were removed because he made a "wrong choice" is not sufficient to show that J.E.H. was removed from Clifton B.'s care for abuse or neglect. Later in Clifton B.'s testimony, the Department attempted to elicit testimony about why J.E.H. was removed, but it failed to do so. Instead, Clifton B. gave the following non-responsive answer:

Q: Isn't it true, sir, that you were pulled over driving under the influence with marijuana when your son was in the car in December of 2009?
A: If I was I was not arrested for marijuana, and I went to jail for marijuana.
Q: Okay.
A: But it was just the police, when they would – where my momma stays at and the laws is crooked sometimes and they don't do the right thing, but I never went to no jail or got busted for marijuana or none of that.

Clifton B.'s testimony is not sufficient to support a finding that J.E.H. was removed from Clifton B.'s care for abuse or neglect. And, because there is no evidence to support such a finding, the evidence is legally insufficient to support termination on "O" grounds.

With respect to termination on "P" grounds, the Department had the burden of proving that Clifton B. used a controlled substance *in a manner that endangered J.E.H. See* TEX. FAM. CODE ANN. § 161.001(1)(P) (West Supp. 2012) (emphasis added). As evidence to support the finding that Clifton B. used a controlled substance in a manner that endangered J.E.H., the Department, once again, points to Mitsui's affidavit, which was attached to its petition; the allegations made in the family service plan; and Clifton B.'s testimony. As explained, the trial court could not take judicial notice of Mitsui's affidavit or the allegations made in the family service plan. With regard to Clifton B.'s testimony, the above excerpts of his testimony do not support a finding that Clifton B. used a controlled substance in a manner that endangered J.E.H. The Department also points out that Clifton B. testified he tested positive for cocaine during the pendency of this suit. While Clifton B. admitted that he tested positive for cocaine during the pendency of this suit, he denied having actually used cocaine and gave no testimony that would support a finding that his use of controlled substance endangered J.E.H. There is simply no evidence in this record that supports the finding Clifton B. used a controlled substance *in a manner that endangered J.E.H.* Therefore, the evidence is legally insufficient to support termination on "P" grounds.[2]

We note that in this case, in addition to termination of Clifton B.'s parental rights, the Department requested conservatorship pursuant to section 153.131 of the Family Code and the trial court made the specific findings that the statute requires: that appointment of a parent as J.E.H.'s managing conservator would not be in his best interest because it would significantly impair his physical or emotional development, and that appointment of the Department was in J.E.H.'s best interest. Under these circumstances, the Texas Supreme Court has held that "the

_____

[2] Having determined that there was no evidence to support termination on "O" or "P" grounds, we need not determine whether there was sufficient evidence that termination of Clifton B.'s parental rights was in J.E.H.'s best interest.

differing elements and standards of review applied to conservatorship and termination orders require[] separate challenges on appeal." *In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008); *see also In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007). Here, Clifton B. has not challenged the Department's appointment as J.E.H.'s managing conservator. Thus, under the usual case, we would reverse the trial court's judgment to the extent it terminates Clifton B.'s parental rights but affirm the trial court's judgment with respect to the Department's appointment as managing conservator. *See In re J.A.J.*, 243 S.W.3d at 616-17. However, this case is not the usual case. Because of the long trial recess, the attorneys in this case and the trial court appear to have been confused and mistaken as to what testimony and evidence had been submitted. It is apparent from the record that all concerned were operating under the impression that more evidence had been introduced than the record reflects. An appellate court has "broad discretion to remand in the interest of justice." *In re S.E.W.*, 168 S.W.3d 875, 885-86 (Tex. App.—Dallas 2005, no pet.). "As long as there is a probability that a case for any reason has not been fully developed, an appellate court has the discretion to remand rather than render a decision." *Id.* at 886. Further, we note that even Clifton B.'s own ad litem attorneys expressed concerns about him during closing argument. One attorney noted that "[a]s to [Clifton B.], we have the evidence produced by the State, Your Honor, and the Court's own observation that [Clifton B.] is suffering from some mental health issues." The other attorney ad litem for Clifton B. stated the following:

> [T]his is a pretty sad situation, Judge. I've met with [Clifton B.] on several occasions and I do believe that he honestly loves his child and wants to be a parent. The problem is that he lacks even the most basic skills and the mental capacity that's required to care for a three or four year old child. I'm also concerned about his criminal history and the possibility that if this child [were] to be placed back into his care it could potentially lead to further criminal cases. So as his ad litem I have to say that it would be inappropriate and improper at this point in time to return [J.E.H.] to his care . . . .

Under these unique circumstances, we exercise our broad discretion to remand in the interest of justice. Thus, with respect to Clifton B., we reverse the trial court's order of termination and in the interest of justice, remand the cause for a new trial. *See In re S.E.W.*, 168 S.W.3d at 885-86 (in a parental termination case, reversing and remanding for a new trial in the interest of justice). In all other respects, the order of termination is affirmed.


Karen Angelini, Justice