

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00346-CV

**IN THE INTEREST OF A.J.W.**, J.W.Jr., R.L.A.W., and J.L.W.

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00863
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Luz Elena D. Chapa, Justice
             Irene Rios, Justice
             Beth Watkins, Justice

Delivered and Filed: November 27, 2019

AFFIRMED

M.D.[1] appeals the trial court's order terminating the parent-child relationship with her four children, arguing legally and factually insufficient evidence supports the trial court's findings of statutory grounds for terminating her rights and that termination is in the children's best interest. We affirm the trial court's order.

## PROCEDURAL BACKGROUND

The Texas Department of Family and Protective Services filed an original petition on April 24, 2018, seeking protection, conservatorship, and termination of the rights of the parents of A.J.W. (born in 2010), J.W.Jr. (born in 2011), R.L.A.W. (born in 2014), and J.L.W. (born in 2017).

---

[1]To protect the identity of the minor children, we refer to appellant and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

The petition was accompanied by a sworn affidavit. The affidavit stated the Department's reasons for seeking removal of the children and described the efforts the Department had made to work with the children's mother, M.D., after concerns were raised about M.D.'s drug use. After a temporary orders hearing on May 14, 2018, the trial court found sufficient evidence to remove the children from M.D.'s care.

The trial court issued temporary orders naming the Department the children's temporary managing conservator and the parents possessory conservators. M.D. was granted weekly supervised visitation with the children. The trial court ordered M.D. to participate in parenting classes and counseling, undergo a psychological evaluation and a drug assessment, and participate in drug testing. The court also ordered M.D. to comply with the Department's service plan once it was prepared. The Department placed the children with their maternal grandparents, where they remained throughout the case. M.D. completed a drug assessment, and on June 8, 2018, she signed a family service plan. After a July 12, 2018 status hearing, the trial court found that M.D. had reviewed, signed, and understood the service plan. The court approved the plan and made it an order of the court. At the subsequent permanency hearings in October 2018 and January 2019, the trial court found that M.D. had not demonstrated adequate and appropriate compliance with the service plan.

The case proceeded to a bench trial on May 2, 2019, at which a Department caseworker and M.D. testified. After trial, the trial court found M.D. constructively abandoned the children, failed to complete the court-ordered provisions of her family service plan, and used a controlled substance in a manner that endangered the children and failed to complete a court-ordered substance abuse program. *See* TEX. FAM. CODE § 161.001(b)(1)(N), (O), (P). The court also found that termination of M.D.'s parental rights is in the children's best interest. *See id.* § 161.001(b)(2). The court terminated M.D.'s parental rights and M.D. timely appealed.

## STATUTORY REQUIREMENTS & STANDARD OF REVIEW

To terminate parental rights under section 161.001 of the Texas Family Code, the Department must prove by clear and convincing evidence: (1) one of the grounds in subsection 161.001(b)(1); and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE §§ 161.001, 161.206(a). A finding of only one predicate ground is necessary. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

M.D. argues the evidence is legally and factually insufficient to support each of the trial court's findings. In assessing the legal and factual sufficiency of the evidence to support the trial court's findings, we employ a heightened standard of review to determine whether the trial court could have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under this standard, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.). In our legal sufficiency review, we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. However, we must consider undisputed or uncontradicted evidence in our review, even if that evidence does not support the trial court's finding. *Id.* When conducting a factual sufficiency review, we evaluate whether, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

## GROUND FOR TERMINATION UNDER SUBSECTION 161.001(b)(1)(O)

The Family Code provides the trial court may terminate the parent-child relationship if there is clear and convincing evidence it is in the child's best interest and the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE § 161.001(b)(1)(O). The court may not order termination under this section if the parent proves by a preponderance of the evidence that she made a good faith effort to comply with the order, but was unable to and the failure to comply was not attributable to any fault of the parent. *Id.* § 161.001(d). M.D. concedes the children were in the Department's care for more than nine months, but argues the evidence does not establish her children were removed under chapter 262 for abuse or neglect, that the court's order was sufficiently specific, or that she failed to comply with the order. In addition, she asserts she made a good faith effort to comply with the court's order.

In order to terminate a parent's rights under subsection O, the record must establish the children were removed from the parent under chapter 262 for abuse or neglect. At trial, the Department's caseworker, Shawana Balfour, testified the children "came into care" because of allegations of "neglectful supervision of the youngest child, mostly due to drugs." M.D. contends this evidence is insufficient. However, when reviewing whether this requirement of subsection O has been established, we consider the evidence the trial court relied upon in determining removal was justified and the trial court's findings in support of the removal. *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). The Department's evidence in support of removal included the affidavit filed with the petition and evidence presented at the May 14, 2018 temporary orders hearing. Although not evidence for all purposes, the affidavit may be considered to show what the trial court relied on to determine removal was justified. *Id.*

The affidavit states the Department received an initial referral from a medical provider. The provider reported that when M.D. was contacted about a missed appointment for infant J.L.W., M.D. was incoherent and "sounded like she was under the influence." The Department received multiple reports from professionals that M.D. was slurring her words and appeared under the influence. The Department staffed the case and accepted it into family based safety services. The affidavit states that during the next several months, M.D. tested positive for methamphetamines, methadone, and benzodiazepines. The family based safety services specialist who authored the affidavit stated that in her interactions with M.D. between February and April 2018, M.D. had slurred and delayed speech, was frequently incoherent, fell asleep at meetings, and appeared to be under the influence of some substance. The affidavit states this conduct was also observed by a Department investigator and supervisor. M.D. appeared to be unable to understand what was being asked of her or to retain information. She also had difficulty communicating effectively. M.D. did not obtain a drug assessment as recommended or begin a domestic violence class as recommended. Further, the affidavit alleges that, after agreeing to a safety placement for the children, M.D. would object to the placement by making abuse allegations against the caregiver. Although none of the allegations were confirmed, the children had been moved three times and it was very disruptive to their lives.

The affidavit also reveals that M.D. had tested positive for methamphetamines at the time she gave birth to a child in 2004, and that at the birth of another child in 2005, both M.D. and the child tested positive for opiates. M.D's children were removed from her care in 2007 on findings of physical abuse and again in 2012 on findings of neglectful supervision and medical neglect. The affidavit states another child was removed from her care in 2014, but the reason was not stated.

At the conclusion of the May 14, 2018 temporary orders hearing, the trial court found, based upon the facts contained in "the sworn affidavit accompanying the petition . . . and the

evidence presented to [the] Court at the hearing," that there was sufficient evidence to satisfy a person of ordinary prudence and caution that:

> (1) there is a continuing danger to the physical health or safety of the children caused by an act or failure to act of the person entitled to possession of the children and continuation of the children in the home would be contrary to the children's welfare; and (2) reasonable efforts, consistent with the circumstances and providing for the safety of the children, were made to prevent or eliminate the need for the removal of the children.

*See* TEX. FAM. CODE § 262.201(j). No record has been filed of the May 14, 2018 hearing during which the trial court made its findings supporting removal of the children under chapter 262. We therefore presume the evidence in the missing record supports the trial court's findings. *In re K.N.D.*, 403 S.W.3d 277, 300 n.6 (Tex. App.—Houston [1st Dist.]. 2012) (Keyes, J., dissenting), *rev'd*, 424 S.W.3d 8 (Tex. 2014). We also note that M.D. did not challenge these trial court's findings.

The words "abuse" and "neglect" in subsection O are used broadly. *In re E.C.R.*, 402 S.W.3d at 248. As used in subsection O, the phrase "abuse or neglect of the child" "necessarily includes the risks or threats of the environment in which the child is placed. . . . If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been 'remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child.'" *Id.* The factual allegations in the affidavit and the trial court's findings establish the children were removed from M.D. because her use of controlled substances and failure to address the issue placed the children at risk of harm if they remained in her care. Removal of the children under chapter 262 for abuse or neglect was conclusively established. *See id.* at 248-49.

M.D. next argues the record does not show there was a court order that "specifically established the actions necessary for [her] to obtain the return of the child[ren]" because the family

service plan was not admitted into evidence, the trial court did not announce it was taking judicial notice of the plan, and the caseworker only gave a very general description of its terms in her testimony. We presume the trial court took judicial notice of the orders in its record of this case "without any request being made and without an announcement in the record that it has done so." *In re J.E.H.*, 384 S.W.3d 864, 869-70 (Tex. App.—San Antonio 2012, no pet.) (holding "trial court could properly take judicial notice that it signed an order adopting the family service plan and what the plan listed as the necessary requirements [the parent] was required to complete before [the child] would be returned to him"); *In re V.A.G.*, No. 04-19-00449-CV, 2019 WL 5927451, at *23 (Tex. App.—San Antonio Nov. 13, 2019, no pet. h.) (presuming on silent record that trial court took judicial notice of the temporary orders issued in the case).

The record in this case includes the trial court's May 2018 temporary orders that stated in paragraph 12:

> **THE COURT FINDS AND HEREBY NOTIFIES THE PARENTS THAT EACH OF THE ACTIONS REQUIRED OF THEM BELOW ARE NECESSARY TO OBTAIN THE RETURN OF THE CHILDREN, AND FAILURE TO FULLY COMPLY WITH THESE ORDERS MAY RESULT IN THE RESTRICTION OR TERMINATION OF PARENTAL RIGHTS.**

In one of the paragraphs that followed, the trial court ordered M.D. "to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit." The Department's service plan, which both a Department representative and M.D. signed on June 8, 2018, was filed with the clerk of the court and is in our record. In its July 12, 2018 status hearing order, the trial court expressly approved the plan and incorporated it by reference "as if the same were copied verbatim" in the order.

M.D.'s family service plan included the following provisions:

– "[M.D.] will complete a drug treatment program as recommended from her [Center for Health Care Services] drug assessment. She will provide the certificate of completion to her legal caseworker."

– "[M.D.] will submit to random drug screens at the discretion of the Department." …
She will test negative on all drug tests."

– "[M.D.] will appear, submit to, and fully cooperate with the completion of a
psychological evaluation with a Department contracted provider. … [M.D.] shall follow
ALL written recommendations contained in the psychological evaluation … "

We presume the trial court took judicial notice of its orders in the case and of the plan incorporated into its orders. *See In re J.E.H.*, 384 S.W.3d at 869-70. We hold the trial court's orders specifically established the actions necessary for M.D. to obtain the return of her children and that the above quoted requirements of the plan are clear and specific enough to support a finding under subsection (O).

Caseworker Balfour testified the most important issues M.D. needed to address in order to have her children returned were her drug abuse and her mental health. Balfour testified M.D. participated in psychological evaluations and was diagnosed with major depressive disorder. Balfour testified the evaluator recommended that M.D. receive counseling, but not until after she addressed her drug abuse by completing a drug treatment program. Balfour acknowledged she had not referred M.D. to a therapist, but testified it was because M.D. had not yet completed a drug treatment program.

Balfour testified M.D.'s first caseworker referred her to the Outreach, Screening, Assessment and Referral Center at the Center for Health Care Services for a drug assessment. M.D. participated in the assessment, and it was completed before the family service plan was signed. Balfour testified the Center referred M.D. to a drug treatment program at Alpha Home, and the family service plan M.D. signed in June 2018 required M.D. to complete the drug treatment program. Balfour, who became M.D.'s caseworker sometime after October 2018, testified M.D. did not complete the program and did not otherwise address her problems with drug abuse. Balfour testified M.D. tested positive for drugs throughout the case, both for the first caseworker and for

her. She testified M.D. admitted using drugs and Balfour was concerned M.D. was continuing to abuse methadone, amphetamines, and benzodiazepines. Balfour testified she discussed M.D.'s failure to participate in the Alpha Home drug treatment program with M.D. in February 2019 after a hearing in the case. She testified she encouraged M.D. to show up for her appointments at Alpha Home and to participate in the program. Balfour testified M.D. did not do so.

It is undisputed that M.D. did not complete a drug treatment program. M.D.'s testimony about the reasons for her not doing so is inconsistent. At one point in her testimony, she stated "I was never referred to anything" regarding drug treatment. However, at another point in her testimony, she stated she was "working with Alpha Home," but "they" told her she "did not need to do any drug treatment" because she "was not coming out dirty." And, finally, M.D. testified she had recently entered a program on her own "to try to get off [her] prescribed medications." She did not provide any details and did not testify she actually participated in or completed the program. M.D. denied having any knowledge of any positive drug test results. M.D. did not present any evidence or argument to support a finding that she made a good faith effort to comply with the plan requirements that she complete a drug treatment program and test negative on all drug tests or that her inability to comply was not attributable to any fault of her own. *See* TEX. FAM. CODE § 161.001(d).

The trial court reasonably could have believed the caseworker's testimony that M.D. had been referred to Alpha Home to complete a drug treatment program, that M.D. did not complete the program, and that M.D. tested positive for controlled substances throughout the case. Considering all of the evidence, we conclude the trial court could have formed a firm belief or conviction that M.D. failed to comply with the specific requirements of the family service plan, and the evidence is both legally and factually sufficient to support the court's finding under subsection O. *See* TEX. FAM. CODE § 161.001(b)(1)(O); *In re J.F.C.*, 96 S.W.3d at 266. Because a

finding of only one predicate ground is necessary, we do not address the trial court's findings under subsections (N) and (P). *See In re A.V.*, 113 S.W.3d at 362.

## BEST INTEREST OF THE CHILDREN

In determining the best interest of a child, courts consider the non-exhaustive *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include the desires of the children, the present and future emotional and physical needs of and dangers to the children, the parental abilities of the individuals seeking custody and programs available to assist these individuals, the stability of the home of the individuals seeking custody and their plans for the children, the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *Id.* These factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Moreover, the evidence proving an act or omission under section 161.001(b)(1) may be probative of what is in the children's best interest. *Id.* at 28. And the "trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The children were two, four, seven, and eight years old at the time of trial and had been living with their maternal grandparents for almost a year. Balfour testified that the children love their parents, but are comfortable living with their grandparents and have stated they want to stay with them. She testified the grandfather works full time and the grandmother does not work and is the children's primary caregiver. There are no other children or adults living in the home. Balfour testified the children are "doing extremely well" and are "on target" in their physical development. One of the children, J.W.Jr., has special needs. He was six years old and non-verbal at the time the

suit was filed. He has been diagnosed as having autism and the Department referred him to a specialist. Balfour testified that J.W.Jr.'s grandmother has been successfully addressing his development issues and that the provider had told Balfour that J.W.Jr. is meeting all of his treatment milestones. Balfour testified the grandparents are meeting all of the children's short-term needs, and she believes they are able to meet their long-term needs. They have indicated they intend to be a permanent placement for the children and would like to adopt them. Balfour testified she does not know of any barriers to adoption by the children's maternal grandparents.

M.D. has maintained contact with the children throughout the case, although she was not always consistent. The temporary orders authorized supervised visits with the children once a week. Balfour testified that for the first nine months after the temporary orders were issued, M.D. attended scheduled visits about one half of the time. She testified the missed visits were frequently because of M.D.'s confusion and misunderstanding where the visits were to occur. She testified M.D. began to consistently visit the children in March 2019, two months before trial. She testified M.D. brought food to her visits, but has not to Balfour's knowledge provided any other form of support for the children during the case.

Balfour testified she believes M.D. previously had her rights to one of her children terminated, but does not know whether drug use was involved in that case. She also testified that M.D. had reported having been the victim of domestic violence at the hands of the children's father. The family service plan required her to participate in a domestic violence prevention program and provide the Department's legal caseworker with a copy of her certificate of course completion. The plan included the name and phone number of a program provider. Balfour testified that as of February 2019, M.D. was engaged in a domestic violence prevention program, but that M.D. was later unsuccessfully discharged for having missed too many classes. M.D. testified she was discharged for having missed five classes, but that two or three of the classes she

missed were due to conflicting court settings. She testified that Balfour was to have called the provider to excuse the absences, but never did. M.D. did not provide an explanation for missing the other classes.

Balfour testified that to her knowledge M.D. did not work or have her own stable housing. M.D. testified she has a place to live, but that Balfour has never visited. M.D. testified that Balfour did not meet with her except at court hearings and that Balfour ignores her. M.D. believes her children should return to live with her because in her view she has completed everything on her family service plan except for the domestic violence class. M.D. testified she does not need a drug treatment program,[2] was not aware of any positive drug tests, and does not have any mental health issues that need to be addressed.

The trial court could have believed Balfour's testimony that M.D. was diagnosed with major depressive disorder, has continuing unaddressed issues with methadone, amphetamines, and benzodiazepines, and tested positive for controlled substances throughout the case. The court could have reasonably found that M.D. was still abusing controlled substances at the time of trial and that she had not addressed or even acknowledged the drug abuse and mental health issues that led to removal of the children. The court could have rationally concluded that M.D. is unable to protect her children or to provide them a safe and stable environment because she minimizes her drug problem, and the court could have concluded M.D. would continue to place the children at risk if they were returned to her care. The record supports that the children's physical, emotional, and developmental needs are being well-met in their current placement and that the placement will likely lead to permanency for them. On the evidence before it, the trial court could have formed a firm belief or conviction that termination of M.D.'s parental rights is in the best interest of the

---

[2] However, she also testified she had recently entered a program to address addiction to prescription drugs.

children. We therefore hold the evidence is legally and factually sufficient to support the trial court's finding that termination of M.D.'s parental rights is in the children's best interest.

## CONCLUSION

Having concluded sufficient evidence supports findings necessary to support the trial court's order, we affirm the trial court's order terminating the parent–child relationship between M.D. and the children A.J.W., J.W.Jr., R.L.A.W., and J.L.W.

Luz Elena D. Chapa, Justice