# Court of Appeals
## Tenth Appellate District of Texas

10-25-00048-CV
10-25-00049-CV

In the Interest of D.L.W. and P.L.W., Children
In the Interest of K.W., a Child

On appeal from the
82nd District Court of Falls County, Texas
Judge Bryan F. Russ, Jr., presiding
Trial Court Cause Nos. 41783, 41958

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

The underlying cases were tried together. After a bench trial, the trial court terminated Mother and Father's parental rights to their three children, D.L.W., P.L.W., and K.W. In two issues on appeal, Father challenges the sufficiency of the evidence supporting the predicate grounds for termination and the best-interest findings as to each child, and contends that the trial court improperly took judicial notice of the two underlying termination files and his criminal file.[1] We affirm.

---

[1] Mother did not appeal the trial court's order terminating her parental rights to the children.

## Background

At the final hearing, Mother agreed that she and Father had a violent relationship dating back to 2018. She testified that the Department removed D.L.W. and P.L.W. and placed them in foster care after she and Father had a physical altercation while the two children were present. Mother explained that in October of 2023, Father was angry with her for being out late at a friend's house with the children. While Father was driving the family home from the friend's house, Father punched Mother in the face. Mother was holding six-month-old P.L.W. in her lap when this occurred, and two-and-a-half-year-old D.L.W. was in the back seat. When they got home, Father choked Mother with a belt to the point of unconsciousness. Mother testified that when she awoke, Father body slammed her, continued to punch her, and fractured her ribs. Mother grabbed a knife from the kitchen and stabbed Father with it. D.L.W. and P.L.W. were crying and upset. Mother testified that this was not the first domestic violence incident that occurred in front of the children. Father provided similar testimony regarding the October 2023 incident, but he denied any prior domestic violence against Mother.

On April 29, 2024, while the case involving D.L.W. and P.L.W. was pending, Mother gave birth to K.W. Mother admitted to using marijuana while she was pregnant with K.W. and she tested positive for marijuana at his birth.

The Department removed K.W. shortly thereafter and placed him in a separate foster home.

At trial, Mother detailed another assault that Father committed against her while these cases were pending. She explained that on September 4, 2024, while she was pregnant, Father chased her down the street and punched her in the stomach. Mother suffered a miscarriage approximately ten days later. Father was charged with the felony offense of assault on a pregnant individual for this conduct. *See* TEX. PENAL CODE ANN. § 22.01(b). At trial, Father admitted that he pled guilty to this charge and received a twelve-year prison sentence. Mother testified that she ended her relationship with Father after this assault.

The Department caseworker testified that both parents were provided with a family service plan in each case.[2] In his testimony, Father agreed that he was aware of the court-ordered services that he was required to complete for reunification with his children. Nevertheless, he admitted that he did "[n]othing at all" toward completion of the services, even before he was in custody. Despite his lack of participation for approximately sixteen months,

---

[2] The family service plans were not admitted into evidence at the final hearing. However, the trial court took judicial notice of both of the underlying case files. The trial court may properly take judicial notice that it signed an order adopting the family service plan and what the plan listed as the necessary requirements to be completed by the parent for the children to be returned. *See In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.).

Father testified that he was "going to get better." He also agreed that although he expected to become parole-eligible within the next couple of years, he was in no position at the time of the final hearing to have his children returned to his care. Father testified that he believed it was in the best interest of his children for neither of the parents' rights to be terminated.

The trial court terminated Father's parental rights pursuant to Subsections D, E, O, and Q and found termination to be in the best interest of each child. *See* TEX. FAM. CODE ANN. §§161.001(b)(1)(D), (b)(1)(E), (b)(1)(O), (b)(1)(Q), (b)(2).

## Sufficiency of the Evidence

In his second issue on appeal, Father argues that the evidence was legally and factually insufficient to support the predicate grounds for termination and the best-interest findings as to each child. *See id.* We disagree.

STANDARDS OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well-established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency); *see also In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009). The factfinder is the sole

judge of the credibility of the witnesses and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *Id.*

PREDICATE GROUNDS

If a parent is terminated under multiple predicate grounds, we will affirm based on any one finding because only one finding is necessary for termination of parental rights when it is accompanied by a finding that termination is in the children's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). But if one of the predicate grounds is based on endangerment under Subsection D or E, we are required to fully address that ground, if presented on appeal, based on future collateral consequences of such a finding. *See In re N.G.*, 577 S.W.3d 230, 234-37 (Tex. 2019).

Termination of parental rights under Subsection E requires proof of endangerment, which means to expose the children to loss or injury, or to jeopardize. *Tex. Dep't. of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The endangerment analysis under Subsection E focuses on whether sufficient evidence exists that the endangerment to the children's well-being was the direct result of the parent's conduct, including acts, omissions, or

failures to act. *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). "A finding of endangerment is supported 'if the evidence … shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child.'" *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024) (citing *Boyd*, 727 S.W.2d at 534).

Relevant to Subsection E, Father's insufficiency argument focuses on the physical proximity of the children while he assaulted Mother. He contends that he never endangered K.W. because the child was never physically present for any of Father's assaults against Mother, and that he did not endanger D.L.W. and P.L.W. though a course of endangering conduct because they were only physically present for the October 2023 assault.

Father's argument ignores the well-established principle that the factfinder may consider conduct that occurred before and after the children's birth, in the children's presence and outside the children's presence, and before and after removal by the Department in an analysis under Subsection E. *See J.O.A.*, 283 S.W.3d at 345; *In re J.F.-G*, 612 S.W.3d 373, 383 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In re E.M.*, 494 S.W.3d at 222. At the final hearing, Father agreed that his criminal history included at least thirteen criminal charges,

mostly involving assault. He admitted to committing two assaults against Mother. Regarding the October 2023 altercation, Father testified that it was unsafe for his children to be present while he and Mother fought and recalled that the children were screaming and crying during the fight. Though Father disagreed, Mother testified that D.L.W. and P.L.W. were present for multiple instances of domestic violence between the parents.

Furthermore, evidence of a parent's drug use is relevant to our review under Subsection E when accompanied by "additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) (quoting *In re J.O.A.,* 283 S.W.3d at 345). At trial, Father agreed that before he was incarcerated, the Department requested him to drug test sixteen times. He further agreed that he skipped all sixteen requested drug tests because he and Mother were using marijuana together and he knew he would have marijuana in his system. Father also admitted to testing positive for marijuana, methamphetamine, "benzos," fentanyl, and alcohol on one occasion when he submitted to a drug test in court. Even though Father was out of custody for several months while these cases were pending, he admittedly did not complete any of the necessary services for his children to be returned. *See In re A.V.,* 697 S.W.3d 657, 659 (Tex. 2024) (considering the

parents' failure to complete court-ordered services, including drug testing and refraining from drug use, in its endangerment analysis).

We find that the evidence presented at trial was legally and factually sufficient to support a finding that Father engaged in a course of conduct that endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Because we find the evidence legally and factually sufficient under Subsection E, we do not address Father's arguments regarding the sufficiency of the evidence under Subsections D, O, and Q. *See In re A.M.R.*, 652 S.W.3d 117, 124 (Tex. App.—Waco 2022, pet. denied).

BEST INTEREST

Father argues that the evidence is legally and factually insufficient to support the best-interest findings because both Mother and Father testified that it would be in the children's best interest for their parental rights to remain intact. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best interest determination. *Id.* There is no requirement that all of these factors must be proved as a condition precedent to parental termination,

and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d at 27. The *Holley* factors focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence relating to the predicate grounds under Texas Family Code Section 161.001(b)(1) may be relevant to determining the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27-28. In this case, the evidence that supports the trial court's findings on the predicate grounds is particularly relevant when considering the children's physical and emotional needs now and in the future and the physical and emotional danger to the children now and in the future. Exposing children to violence in the home undermines the safety of the home environment and is relevant when considering the best interest of the children. *See In re O.J.P.*, No. 01-21-00163-CV, 2021 WL 4269175, at *17 (Tex. App.—Houston [1st Dist.] Sept. 21, 2021, no pet.) (mem. op). Non-compliance with a family service plan supports an inference that there is an ongoing risk to the children's well-being because such non-compliance indicates that the parent does not have the ability to motivate himself to seek out available resources needed now or in the future in order to

promote the children's well-being. *In re C.K.T.*, No. 10-23-00288-CV, 2024 WL 860869, at *3 (Tex. App.—Waco Feb. 29, 2024, pet. denied) (mem. op.). Further, a parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize the children's present or future well-being. *See In re J.S.S.*, 594 S.W.3d at 505.

D.L.W. and P.L.W. were undisputedly present during at least one violent incident between Mother and Father. While driving a vehicle, Father punched Mother in the face as Mother held their infant in her lap. The assaultive conduct continued in front of the children after they arrived home, with the children screaming and crying as Father choked Mother with a belt. Father pled guilty to assaulting Mother again on September 4, 2024, when his parental rights to all three children were in jeopardy. Additionally, Father admittedly chose not to avail himself of the resources available to address the concerns that brought the children into the Department's care, even while he was not incarcerated. He provided no explanation at trial for his failure to participate in his services, simply noting that he did "[n]othing at all." The trial court could reasonably determine that Father's failure to participate in services jeopardized the children's present and future well-being and supported a finding that termination was in their best interest, despite

Father's apology for his conduct and promise to do better if given the opportunity.

Further, at the time of trial, D.L.W. was four years old, P.L.W. was almost two years old, and K.W. was ten months old. D.L.W. and P.L.W. had been in foster care for approximately sixteen months and K.W. had been in foster care since shortly after he was born. Though all three children were too young to express their own desires, evidence was presented that the children have bonded with their caregivers, are well-cared for by them, and have spent minimal time with Father. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The foster parents of D.L.W. and P.L.W. intervened in their case and testified that they intend to adopt both children. D.L.W.'s foster mother explained that D.L.W. came into foster care struggling with speech delay and aggression, but that he has shown significant improvement in both areas through participation in speech and behavioral therapy. She also described having a deep bond with the children and defined their relationship with their foster father as "extremely close." The Department caseworker testified that K.W.'s foster home was a safe place and that his foster parents intended to adopt him. Further, evidence was presented that both of the foster families talk weekly, share pictures, and have virtual

visits so that the siblings can maintain their relationship despite placement in different homes.

Meanwhile, Father testified that he participated in only one visit with the children while these cases were pending. A parent's failure to regularly visit his children after removal, especially young children, may support a best-interest finding because it signals that the parent-child relationship is not an appropriate one and that the parent is unwilling or unable to meet his children's emotional and physical needs. *See In re A.V.G.-P.*, No. 10-23-00294-CV, 2024 WL 1327908, at *4 (Tex. App.—Waco Mar. 28, 2024, no pet.) (mem. op.). Additionally, permanence is of paramount importance in considering the children's present and future needs, and prompt and permanent placement of the children in a safe environment is presumed to be in the children's best interest. *See In re M.C.T.,* 250 S.W.3d 161, 170 (Tex. App.—Fort Worth 2008, no pet.); *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.). Father was sentenced to serve twelve years in prison for assaulting Mother while she was pregnant and did not expect to become eligible for parole for a few years. He agreed that he was in no position for the children to be returned to his care at the time of trial.

We conclude that the evidence is legally and factually sufficient to support the trial court's best-interest finding as to each child. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Accordingly, we overrule Father's second issue.

## Judicial Notice

In his first issue, Father contends that the trial court reversibly erred by taking judicial notice of its own records in each of these cases as well as Father's criminal case regarding his assault of Mother while she was pregnant. We disagree.

AUTHORITY

Texas Rule of Evidence 201 limits the type of facts that a trial court may judicially notice to those that are either (1) generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. TEX. R. EVID. 201(b). A trial court may generally take judicial notice of the existence of its own records in a case involving the same subject matter between the same or practically the same parties. *Gardner v. Martin*, 162 Tex. 156, 345 S.W.2d 274, 276 (Tex. 1961); *In re C.L.*, 304 S.W.3d 512, 514 (Tex. App.—Waco 2009, no pet.). A court may not, however, take judicial notice of the *truth* of the factual contents contained in the file. *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ).

When evidence is improperly judicially noticed in a civil case, we disregard that evidence in our analysis. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("When evidence is the subject of improper judicial notice, it amounts to no evidence"); *Davis v. State*, 293 S.W.3d 794, 799 (Tex. App.—Waco 2009, no pet.). We will not reverse a trial court's judgment based on an error of judicial notice unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *In re Estate of Downing*, 461 S.W.3d 231, 240 (Tex. App.—El Paso 2015, no pet.).

DISCUSSION

Before the Department called its first witness, the following relevant exchange occurred:

> [DEPARTMENT'S COUNSEL]: I'd also ask that the Court take judicial notice of both CPS case files, as well as the criminal case file on [Father], Cause Number 11613.
>
> …
>
> THE COURT: Do you have any objection to the Court taking judicial notice of both CPS cases, as well as [Father's] criminal case?
>
> [FATHER'S COUNSEL]: Yes, Judge, I do. One, I was not his attorney in the criminal case; so, the allegations, or anything like that, I'm not familiar with. I would object to the judge taking judicial notice of any fact statements or any statements that's possibly for testimony this Court is to determine.

THE COURT: Okay.

[FATHER'S COUNSEL]: The fact that there is an indictment that has been filed, no objection to that. And, also, same objection throughout these cases.

THE COURT: Your objection is duly noted and the same is overruled.

Father was later granted a running objection to the trial court taking judicial notice of the files.

On appeal, Father relies on our opinion in *Davis* and the San Antonio Court of Appeals' opinion *In re J.E.H.* to support his argument that we should reverse the trial court's order terminating his parental rights. *Davis v. State*, 293 S.W.3d 794 (Tex. App.—Waco 2009, no pet.); *In re J.E.H.*, 384 S.W.3d at 871. Both of these cases are distinguishable.

*Davis* involved a civil forfeiture proceeding in which the trial court took judicial notice of the testimony of two criminal trials without the transcripts being offered into evidence. *Davis*, 293 S.W.3d at 796. For testimony at a prior hearing or trial to be considered at a subsequent proceeding, the transcript of such testimony must be properly authenticated and entered into evidence. *Id.* at 798. Because the transcripts were not admitted into evidence, any testimony from those trials provided no evidence concerning the facts underlying the forfeiture action. *Id.* Therefore, in our legal sufficiency review,

we did not consider the substance of the improperly judicially-noticed testimony. *Id.* at 799. None of the evidence presented by the State at the forfeiture proceeding made any mention of the seized property that was the subject of the forfeiture action. *Id.* at 796. Because the evidence failed to create a nexus between the illegal activity and the seized property, we found the evidence was legally insufficient to establish that the subject property was contraband. *Id.* at 800.

In *J.E.H.*, the trial court terminated a father's parental rights to his son under Subsections O and P. *See In re J.E.H.,* 384 S.W.3d at 867-68; TEX. FAM. CODE ANN. §§ 161.001(b)(1)(O), (b)(1)(P). The only evidence presented at trial was the testimony of the father and his sister. *In re J.E.H.*, 384 S.W.3d at 868. No one from the Department testified, and no other evidence was admitted. *Id.* In its sufficiency analysis, the appellate court presumed that the trial court took judicial notice of its own file. *Id.* at 869-70. On appeal, the Department attempted to rely on the truth of factual statements in the removal affidavit and specific allegations within the family service plan to demonstrate that the child was removed for abuse or neglect (as required for termination under Subsection O) and that the father used a controlled substance in a manner that endangered the child (as required for termination under Subsection P). *Id.* at 870-71; *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(O),

(b)(1)(P). Without considering the truth of any of the factual statements in the judicially-noticed file, the reviewing court considered the testimony offered at trial, and found no evidence that the child was removed for abuse or neglect or that the father used a controlled substance in a manner that endangered the child. *Id.* at 870-72.

In both *Davis* and *J.E.H.*, the record lacked any evidence of certain necessary elements when the reviewing court ignored the truth or substance of the judicially-noticed facts. Here, we have already determined that the evidence was legally and factually sufficient to terminate Father's parental rights based on the testimony and evidence admitted at the final hearing. Father makes the blanket assertion that the trial court improperly considered "the facts and allegations contained in the files" and that "such improper consideration resulted in his parental rights being terminated[;]" however, he does not explain what specific facts within the files were allegedly improperly judicially noticed or how disregarding those facts would impact our sufficiency analysis.

Accordingly, we overrule Father's first issue.

## Conclusion

Having overruled both of Father's issues on appeal, we affirm the judgments of the trial court.

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  June 26, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

