

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00422-CV

**IN THE INTEREST OF A.M.L.**, a Child

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-01252
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 11, 2019

AFFIRMED

Appellant Father appeals the trial court's order terminating his parental rights to his daughter, Amy.[1]  The only issue presented by Father is whether the evidence is legally and factually sufficient to support the trial court's finding that termination is in the child's best interest. We affirm the trial court's order.

### BACKGROUND

On June 8, 2018, the Texas Department of Family and Protective Services ("Department") filed a petition to terminate parental rights.  The Department became involved with the family on

---

[1] To protect the identity of a minor child in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and the child by the alias "Amy."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court's order terminates both Mother's and Father's parental rights to Amy, but only Father appeals.

May 11, 2018, when the Department received a report that Amy and Mother tested positive for methadone and heroin during Amy's delivery.

The trial court held a bench trial on June 4, 2019, at which Father appeared in person and testified on his own behalf. The trial court also heard testimony from Department caseworker Kim Fitzgerald. Additionally, the trial court took judicial notice of the pleadings, service of process documents, court orders, and family service plans contained in the court's record.[2] On June 4, 2019, the trial court signed an order terminating Father's parental rights to Amy.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found evidence of three predicate grounds to terminate Father's parental rights.[3] The trial court also found termination of Father's parental rights was in the best interest of the child.

---

[2] A trial court may take judicial notice of the contents of its record. *See In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.); *see also In re B.R.*, 456 S.W.3d 612, 617 n.4 (Tex. App.—San Antonio 2015, no pet.). The trial court may not, however, take judicial notice of the truth of any allegations in its records, including allegations contained in any affidavits. *In re J.E.H.*, 384 S.W.3d at 870; *In re B.R.*, 456 S.W.3d at 617 n.4. We limit our review to the evidence admitted at trial. *See In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *2 n.2 (Tex. App.—San Antonio May 15, 2019, pet. denied) (mem. op.).

[3] The trial court found evidence Father

> constructively abandoned the child … [;] … failed to comply with the provisions of a court order … [;] … [and] used a controlled substance … in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program[,] or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance …[.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P).

When reviewing the sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency). Further, in a trial to the bench, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Health Tronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We therefore defer to the trial court's judgment regarding credibility determinations. *Id.* at 823-24.

## BEST INTERESTS

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Family Code section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b). We also apply the *Holley* factors to our analysis.[4] *See Holley v. Adams*,

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

### DISCUSSION

Father contends the evidence is legally and factually insufficient to support the trial court's determination that termination of his parental rights is in Amy's best interest. Taking into consideration the above listed standards and factors, we review the evidence presented during the trial on the merits.

The Department caseworker, Fitzgerald, testified Amy was born addicted to heroin and methadone, suffered withdrawal symptoms, and remained in the hospital for three months. Fitzgerald also testified that during the Department's initial investigation, Father acknowledged he was diagnosed with bi-polar disorder and was over-medicating with Xanax. According to the

record, Father signed his service plan on July 31, 2018. As part of his service plan, Father was required to attend parenting classes; engage in individual therapy and follow recommendations resulting from individual therapy; complete a psychological evaluation and follow recommendations resulting from the evaluation; complete a drug assessment; and demonstrate sobriety through random drug tests.

Fitzgerald testified that at the time of the 60-day hearing in August 2018, Father was not fully engaging in services but he was visiting Amy regularly. On October 22, 2018, Mother was arrested for stabbing Father, and Father was hospitalized for two weeks following the assault. Fitzgerald testified that following Father's hospitalization, his visitation with Amy became inconsistent and that Father did not start visiting Amy consistently again until April 2019.

Fitzgerald testified that at the time of the trial, Father was not in compliance with his service plan. According to Fitzgerald, Father completed parenting classes the month prior to trial as well as the required drug assessment. However, Father attended only one individual therapy session and was discharged unsuccessfully. Father was also unsuccessfully discharged from the domestic violence class because he did not attend classes as assigned following the assault. Father did not submit to a single drug test as required by his service plan. Fitzgerald testified that at least four drug tests were requested by the Department and Father "didn't refuse [to submit to the drug tests] … he just didn't show up." On one occasion, Father told Fitzgerald he had car trouble but he did not offer any explanation to Fitzgerald for missing the other tests.

Fitzgerald testified that when she attempted to conduct unannounced visits at Father's home, he was never home or would not answer the door. When Fitzgerald sent an assistant caseworker unknown to Father to Father's home for a visit, an unknown woman was hiding under blankets in Father's bedroom. The assistant asked Father to provide a real-time photograph on his phone to prove the woman was not Mother. Father, however, provided a photograph of a woman

taken at the zoo, which raised suspicions that Father was still in a relationship with Mother. Fitzgerald also testified that Father informed her that he would allow Mother to be in Amy's life. According to Fitzgerald, this raised concerns regarding Father's ability to protect Amy and keep her safe, as well as Father's understanding of the danger Mother could pose to Amy.

Fitzgerald testified Amy was doing well in her foster home, which was likely to lead to permanency and adoption. According to Fitzgerald, Amy was being assessed for developmental delays but her placement was meeting her needs.

Father testified he was unemployed following the assault because he was recovering. According to Father, he began working in January 2019, he was employed at the time of the trial, and he was working regularly. Father also testified that he lived in his own apartment and that his mother, who would be available as a support system to him and to help care for Amy, lived around the corner. Father additionally testified he is able to financially support Amy and that he has access to childcare. Father stated he is involved in a mentoring program, is willing to attend therapy sessions and classes as necessary, and will submit to drug tests as requested. During his testimony, Father further stated he would not allow Mother access to Amy and that he had not seen Mother since she stabbed him.

When questioned as to why he did not submit to drug testing when scheduled, attend therapy, or remain consistent with visiting Amy, Father responded that for a time he had car trouble. However, Father acknowledged that although he had car trouble, he used the bus to get around. When asked why he did not submit to drug testing, specifically, Father responded, "No excuse for that at all. One of the main things was because of how far it was." When questioned whether he could have taken the bus to therapy, Father answered in the affirmative. Finally, when asked why he did not visit Amy regularly, Father responded, "To be honest, there's no excuse. I could say there's car troubles. I could say all that stuff, but there's no excuse. I could have jumped

on the bus." Father explained that in March 2019, he realized Amy is important to him and she needs her father in her life.

In this case, the trial court could have concluded that Father's short duration improvements did not conclusively negate Father's history of irresponsible choices. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The trial court also could have reasonably inferred that Father's failure to appear for drug testing indicated that he was avoiding testing because he was using drugs. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [Mother's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that [Mother]'s failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs.").

Father's failure to submit to drug testing, through which the trial court could infer Father's continued prescription drug abuse, is relevant to multiple *Holley* factors, including Amy's emotional and physical needs now and in the future, the emotional and physical danger to Amy now and in the future, Father's parental abilities, the stability of Father's home, and the acts or omissions which may indicate an improper parent-child relationship. "A parent's decision to engage in illegal drug use during the pendency of a termination suit may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re Z.J.B.*, No., 14-18-00759-CV, 2019 WL 347474, at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (mem. op.) (recognizing in its best-interest analysis that a father's failure to complete three scheduled drug tests during the pendency of the case and one positive drug screening weighed in favor of the trial court's finding that termination of his parental rights was in the child's best interest); *see also In re E.R.W.*, 528 S.W.3d 251, 265-66 (Tex. App.—Houston

[14th Dist.] 2017, no pet.) (considering mother's admissions of drug use and failure to submit to drug testing in analyzing best-interest factors of child's needs and danger to the child); *In re L.C.L.*, No. 14-09-00062-CV, 2019 WL 3126147, at *9 (Tex. App.—Houston [14th Dist.] July 16, 2019, no pet.) (mem. op.) (including a parent's failure to appear for at least four drug screenings as evidence of an act or omission indicating the parent-child relationship was not appropriate which weighed in favor of a finding that termination was in the children's best interest). Additionally, a parent's illegal drug use exposes the child to the possibility that the parent may be impaired or imprisoned. *In re E.R.W.*, 528 S.W.3d at 264. "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.); *see also In re L.M.F.*, 02-13-00459-CV, 2014 WL 2465137, at *11 (Tex. App.—Fort Worth May 29, 2014, no pet.) (mem. op.) (taking into consideration Mother's abuse of prescription drugs in its best-interest analysis).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment).

### CONCLUSION

For the foregoing reasons, we affirm the trial court's order terminating Father's parental rights.

Irene Rios, Justice