

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00021-CV

**IN THE INTEREST OF J.T.W.** and J.L.A., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00754
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Irene Rios, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: July 2, 2025

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

Appellant Mother appeals the trial court's order terminating her parental rights to her children, J.T.W. and J.L.A.[1] Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights is in the children's best interests. We agree the evidence is insufficient to support a finding that termination of Mother's parental rights is in the children's best interests and reverse that portion of the trial court's termination order.

### BACKGROUND

The Department became involved in the underlying case when it received a report that Mother's former paramour allegedly physically abused J.L.A. On May 18, 2023, the Department

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the children's mother as "Mother," and we refer to the children using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Although the trial court's order terminates the parental rights of Mother and each child's respective father, only Mother appeals.

filed a petition seeking termination of Mother's parental rights. The trial court held a bench trial on October 17, 2024. The trial court heard testimony from Jazmin Chavez, the Department's caseworker; Mother; and the children's foster mother ("Foster Mother").

On December 19, 2024, the trial court signed an order terminating Mother's parental rights to the children. The trial court terminated Mother's parental rights based on statutory grounds (N) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). The trial court also found it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

"[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the

credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## BEST INTERESTS

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's findings that termination of her parental rights was in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

"The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*(A) Department's Reasons for Termination*

Here, the evidence presented to the trial court raised four concerns the Department had with reunification: (1) Mother's continued relationship with a former paramour who allegedly physically abused J.L.A.; (2) Mother's ability to care for J.L.A.'s medical needs; (3) whether Mother has stable housing; and (4) whether Mother maintains stable employment and income. We recognize these reasons may support termination when they are supported by evidence. On this record however these reasons are either based solely on conjecture and conclusory testimony, or they are not supported by the evidence.

*(1) Physical Abuse Allegations*

Regarding the physical abuse allegation, Jazmin Chavez, the Department's caseworker, testified:

> [The children] came into care because of physical abuse allegations regarding [J.L.A.] He does have some seizures[,] and he was presented with bruising and different injuries on his body. The case originally came in against [Mother's] ex-paramour.

Chavez testified charges were brought against Mother's former paramour, but they were later dismissed. According to Chavez, the Department was concerned that Mother maintained contact with the former paramour. However, the Department did not require Mother to take a domestic violence class indicating the Department was not concerned about the allegations of abuse. Other than the testimony mentioned above, there was no evidence regarding the child's injuries, the circumstances surrounding the alleged abuse, why the criminal charges against the former paramour were dismissed, or whether the allegations of abuse were even credible. Further, there was no evidence presented at trial indicating the extent of Mother's continued contact with the former paramour or the threat posed to the children. Nor was there any evidence supporting Chavez's assertion that Mother would fail to protect the children.

*(2) Medical Needs*

The trial court heard testimony that J.L.A is diagnosed with cerebral palsy, which causes him to suffer from seizures. J.L.A. is nonverbal, has special education needs and stigmatisms, and wears braces on his feet to help him walk. Chavez testified she is concerned Mother will be unable to meet J.L.A.'s medical needs. Chavez's opinion seems to be based on Mother not having taken any classes or education programs to learn about J.L.A.'s special needs. Although Mother was provided information for such classes or programs, the testimony does not indicate Mother was required by her service plan or otherwise to take these classes or programs regarding J.L.A.'s medical needs.

Chavez also noted Mother only attended "three or so appointments" to learn about J.L.A.'s medical needs and missed his Admission, Review, and Dismissal (ARD) appointment at school. Chavez later stated that Mother was unable to attend medical appointments because she was working, and Chavez acknowledged the Department did not provide Mother with the opportunity to attend the medical appointments virtually. As explained more fully below, Chavez faulted Mother for not earning enough income, yet criticized Mother's inability to attend the medical visits because Mother was working to earn sufficient income to support the children. The Department's position puts Mother in an untenable situation where satisfying the Department's concerns regarding income causes her to miss some of J.L.A.'s medical appointments. We also note Chavez was unable to say how many medical visits Mother missed. Chavez simply stated J.L.A. "has had well over three" appointments. Mother testified she was unaware she could attend J.L.A.'s medical appointments at first because there was a protective order in place. Mother stated she was not made aware she could attend the appointments until "June or July."[4] When she did attend medical appointments, Chavez stated Mother "did not ask questions or stay engaged."

Chavez admitted however that Mother, who has no formal medical education or training, would ask Foster Mother, who is a nurse practitioner, to explain the child's medical needs after the appointments. In fact, Foster Mother testified the only reason she has a better understanding of the children's medical needs is because of her education, training, and experience as a nurse practitioner. Foster Mother stated she has been able to break down the information from the medical appointments and explain J.L.A.'s medical needs to Mother. Foster Mother also committed to continue to help Mother with the medical appointments and explain the children's medical needs in the future if Mother's rights are not terminated.

---

[4] It is unclear whether Mother was referring to June or July in 2023 or 2024. The context of the testimony indicates Mother was referring to the summer of 2024, only a few months before trial.

Foster Mother further explained J.L.A.'s medical appointments have become less frequent and indicated his medical needs are not as significant as the Department represents. Foster Mother testified:

> For right now, the appointments have slowed down a little bit. He has one more appointment that he'll see with neurology at the end of this month, and then he'll probably be discharged from their care, because he's stable from a neurology standpoint.
>
> As far as his developmental pediatrician, he'll be seeing him twice a year. We just had a visit that [Mother] attended day before yesterday. And so, she's caught up on his developmental needs and appointments.
>
> He'll continue his PT and speech. You know, that will occur during school, so there's no involvement with the parents with those particular therapies.
>
> And then, he'll have his vision appointments. And now, it's going to be annually with that. So his next vision will be in December. So his appointments have slowed down significantly now that he's a lot more stable.

Aside from the missed medical appointments, the Department did not introduce any evidence as to why Mother would be unable to care for the children's medical needs. It appears the Department sought to hold Mother to a medical professional standard in caring for J.L.A. If failure to meet that standard were enough to terminate parental rights, then every parent who is not medically trained would be in jeopardy of losing parental rights to their children who are affected by disease or require special needs. Fortunately, the Department's burden is higher—it must meet the heightened burden to prove, by clear and convincing evidence, that it is not in the children's best interests for them to have any legal relationship with the parent whatsoever. *See In re K.N.J.*, 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.). The question before the trial court is not whether the children might have a better life in the custody of someone else, the question is whether Mother's actions are such that her relationship with her children should be forever severed. *See A.H.*, 414 S.W.3d at 807 ("[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere."). And "termination is not warranted

'without the most solid and substantial reasons.'" *In re D.L.W.W.*, 617 S.W.3d 64, 81 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). While there is no doubt Foster Mother may be more adept to care for J.L.A.'s medical needs, Mother's parental rights cannot be terminated just because she does not have the training or knowledge of a medical professional. Although the evidence indicates Foster Mother may be more apprised of J.L.A.'s medical needs, the record does not reflect that Mother will be unable to meet J.L.A.'s medical needs, especially considering Foster Mother's commitment to continue to assist Mother in caring for J.L.A.'s medical needs should the children be reunified with Mother.

*(3) Stable Employment*

At the outset, we note Chavez testified Mother was required by her service plan to maintain stable employment. Chavez testified Mother provided her with weekly pay stubs for the two months preceding trial confirming Mother currently has stable employment. Nevertheless, Chavez opined Mother could not meet the children's physical needs because Mother's income is not sufficient to provide for herself and her children.

Chavez testified Mother wanted to cancel some visits with the children because she was unable to provide food for the children. Chavez then clarified that only one visit was going to be cancelled due to a lack of food. The visit ultimately happened, however, because Foster Mother agreed to provide food and diapers for the visit. We note that Foster Mother is fictive kin and part of Mother's support system.

Chavez never mentioned how much income Mother earned, nor did she testify to Mother's expenses. Chavez simply stated that Mother is unable to provide food for herself and the children with her current bills. The Department presented no evidence regarding the extent of Mother's financial obligations and whether Mother's expenses could be prioritized to accommodate the children's needs. Because no underlying facts support Chavez's assertion, her statement that

Mother is unable to afford food for the children is conclusory and does not amount to more than a scintilla of evidence. *See A.H.*, 414 S.W.3d at 807 (holding conclusory testimony does not amount to more than a scintilla of evidence).

To the contrary, Chavez testified Mother sought to obtain government assistance, but Mother was ineligible for the programs because her income was too high. Mother testified she will be eligible to receive financial assistance from these programs when the children are reunified with her. Chavez's and Mother's testimony indicates Mother sought out programs to assist her in promoting the children's best interests and can meet the children's physical needs. *See Holley*, 544 S.W.2d at 372 (providing the trial court should consider the programs available to assist the parent when determining whether termination of parental rights is in the children's best interests).

*(4) Stable Housing*

Chavez testified Mother has housing, but opined Mother has not shown she can maintain stable housing because she has nearly been evicted twice in the last year due to non-payment of rent. Mother was able to avoid the first attempt to evict her in the summer before trial because she was able to procure "resources from the city to help pay" her rent. Chavez also testified Mother avoided the most recent eviction, which appeared to be in the process during trial, because Mother was able to procure help from her support system. Although the trial court may have been concerned that Mother was nearly evicted twice in one year, the evidence shows that Mother was able to avoid both evictions by leaning on her support system and has nevertheless maintained stable housing throughout the pendency of the case. Further, Chavez testified it was appropriate for Mother to rely on her support system to gather the resources to avoid eviction. *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (providing the trial court should consider in its best-interest determination "whether an adequate social support system . . . is available to the child").

*(B) Best Interest Factors*

*(1) Desires of the Children and Whether the Children Are Fearful of Returning to Mother*

The Department elicited no testimony regarding the children's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied). Here, Chavez testified the children have been with Foster Mother since removal, are well-cared for by Foster Mother, and they are bonded with Foster Mother. However, as explained more fully below, the evidence conclusively establishes that Mother has consistently attended visitation with the children. Therefore, this factor does not weigh in favor of termination.

*(2) Emotional and Physical Needs, Age and Physical and Mental Vulnerabilities*

J.T.W. was eight years old and J.L.A. was four years old at the time of trial. J.L.A. is diagnosed with cerebral palsy, experiences seizures, has stigmatisms, and wears braces on his feet to help him walk. J.L.A. also receives special education and occupational and speech therapy. The Department presented no evidence indicating J.T.W. has any physical or mental vulnerabilities.

Chavez opined Mother is unable to meet the children's emotional needs because Mother "has a little bit of a harder time with [J.L.A.]." Chavez stated Mother told her J.L.A. is "[Foster Mother's] baby and has a very strong emotional attachment to [Foster Mother]." However, Chavez also stated Mother does very well with J.T.W., "is very attached to J.T.W.[,] and very close with him." Although we recognize J.L.A. may have a very strong attachment to Foster Mother, the testimony does not indicate Mother is unable to care for J.L.A.'s emotional needs.

Chavez also opined Mother has not shown the responsibility to parent during the case because Mother has not taken the necessary efforts to learn how to care for J.L.A.'s special medical

and educational needs. As explained above, this conclusion is not supported by the evidence presented at trial.

Chavez stated she did not think Mother has shown the ability to parent because Mother "does not take advantage of th[e] opportunity" to visit the children more often. But as explained more fully below, Chavez testified Mother visits the children weekly and Foster Mother testified Mother visits the children one to two times a week. These factors do not weigh in favor of termination.

(3) *Emotional and Physical Dangers, History of Physical Abuse or Substance Abuse, Magnitude of Harm*

Aside from Chavez's scant testimony that J.L.A. had some bruising and the bare allegation that he was allegedly physically abused by Mother's former paramour, the Department presented no evidence that the children experienced any harm, or the magnitude, frequency, and circumstances of any alleged harm.

The Department also elicited no evidence of any substance abuse by Mother. These factors do not weigh in favor of termination.

(4) *Parental Abilities*

The only evidence regarding Mother's parental abilities was Chavez's conclusory statement that Mother cannot parent the children because she did not visit them more often and did not attend all medical appointments for J.L.A. As explained above, the testimony elicited at trial does not support this conclusion. This factor does not weigh in favor of termination.

(5) *Programs Available and Social Support System*

The testimony indicates Mother inquired about financial assistance programs to assist her in raising the children. Further, Foster Mother testified she and Mother have also learned about a program through the Texas Education Agency that will allow the children to remain in their current

school to continue addressing J.L.A.'s special education needs if they are reunified with Mother. This factor weighs against termination.

*(6) Plans for the Children*

Here, the Department does not have a permanency plan for the children. Foster Mother testified she is "on the fence" about being a permanent home for the children. According to Foster Mother, her goal has always been to help Mother so the children can transition back to reunification with Mother. Foster Mother stated she cares about the children and their best interests and "really do[esn't] want to see them with anybody else but their mom." Chavez acknowledged Foster Mother is unsure whether she wants to be a permanent placement for the children, but stated there is a maternal uncle ("Maternal Uncle") in South Carolina who could be a placement for the children. However, Chavez admitted the Department is only in the preliminary stages of exploring the placement with Maternal Uncle. The Department has not even conducted an initial background check on Maternal Uncle. And although Maternal Uncle is aware of J.L.A.'s special needs, he has neither met the children nor attended J.L.A.'s medical appointments.

When the Department's attorney asked Chavez why it is in the children's best interests to terminate Mother's parental rights given the lack of a permanency plan, Chavez replied: "At this time, it is in the best interest as if [Foster Mother] was willing to adopt or [Maternal Uncle is] also willing to adopt. We have an option to adopt the children, and I'll have a permanent plan for these kiddos." However, contrary to the Department's position, the uncertainty that comes with a promise to have a plan at some undisclosed time in the future does not equate to permanency for the children. *See C.H.*, 89 S.W.3d at 28 ("Evidence about placement plans and adoption are, of course, relevant to best interest."); *In re J.I.T.*, No. 01-17-00988-CV, 2018 WL 3131158, at *22 (Tex. App.—Houston [1st Dist.] June 27, 2018, pet. denied) (mem. op.) (concluding the Department's "lack of a fully interviewed, vetted, and approved adoptive family with a permanent

home" for the children weighed against termination). Accordingly, this factor weighs against termination.

### (7) Stability of the Home

As mentioned above, the testimony at trial established that Mother has stable housing and stable employment. When asked whether Mother's lack of transportation will be an issue, Foster Mother opined it will not be a problem because she is committed to continue to be a resource for Mother if the kids are reunified. Foster Mother stated she would be an extension of resources and help Mother with transportation for J.L.A.'s medical appointments and with finding transportation to get the children to and from school. This factor does not weigh in favor of termination.

### (8) Acts or Omissions and Excuses

Chavez testified a service plan was created for Mother and was narrowly tailored to address the issues leading to removal. Chavez stated the Department went over the plan with Mother, Mother understood the plan, and she received a copy of the service plan. The Department asked the trial court to take judicial notice of Mother's service plan. The trial court was permitted to take judicial notice that it signed an order adopting the family service plan and what the plan listed as the necessary requirements for Mother to complete before her children would be returned to her. *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.). "However, the trial court could not take judicial notice of the allegations the caseworker made in the family service plan."[5] *Id.*

Chavez testified Mother was required to participate and complete parenting classes, a psychological evaluation, and counseling. Mother was also required to maintain stable employment and housing, attend visitation with the children, and was not allowed to have contact with her former paramour. Mother successfully completed the parenting classes and psychological

---

[5] Because the allegations in the service plan were not part of the trial evidence, we do not consider those allegations in our review.

evaluation. Mother was actively engaged in therapy until July 2024. As mentioned above, Chavez's testimony established that Mother has maintained stable employment and stable housing even though Chavez opined otherwise.

The trial court also heard testimony that Mother consistently visited the children. Chavez testified Mother would visit the children once a week for a few hours and opined the visits were appropriate. Foster Mother testified Mother visited the children one to two times per week. Chavez opined Mother's parental rights should be terminated because she did not visit the children more often despite having open access to the children and an open offer from Foster Mother to provide transportation for Mother to visit the children. When Chavez asked Mother why she didn't visit the children more often, Mother told Chavez, "[S]he was working a lot and that Uber costs a lot of money to get there." Although Foster Mother offered to provide transportation, Mother stated, "[S]he didn't want to inconvenience [Foster Mother]." Mother also testified that she was working Wednesday through Saturday every week but would go see the children on Sundays and try to get them on her days off. Foster Mother confirmed she provided transportation for Mother "multiple times" to facilitate the visits. Foster Mother further testified that Mother would "come over whenever she had the opportunity . . . , on the days that she wasn't working and she had the means to come over to my house." We recognize this testimony is partially disputed with Chavez testifying that Mother visited the children once a week, and Mother and Foster Mother testifying that the visits occurred one to two days a week. Also, Foster Mother's testimony that Mother would come to Foster Mother's house when she had the means indicates Foster Mother did not always provide Mother with transportation. Notwithstanding the trial court's role in making the credibility determinations, it is undisputed that Mother consistently visited the children every week.

As mentioned above, the evidence failed to establish that Mother's contact with her former paramour posed a potential danger to the children. These factors do not weigh in favor of termination.

*(9) Frequency and Nature of Out-of-Home Placement*

The Department presented no evidence that Mother had any prior history with the Department or that the children had ever been removed from the home. This factor does not weigh in favor of termination.

*(10) Results of Psychiatric, Psychological, or Developmental Evaluations*

There was no evidence presented regarding the results of psychiatric, psychological, or developmental evaluations of the children or Mother. This factor does not weigh in favor of termination.

*(11) Willingness and Ability to Complete Counseling and Cooperate with the Department*

As mentioned above, Chavez testified Mother was engaged in therapy until July 2024. Chavez stated Mother failed to show for an appointment in July 2024 and never attended another therapy session. When Chavez asked why Mother stopped attending therapy, Mother told Chavez, "[S]he had gotten busy and just kind of forgotten about that." We recognize a parent's failure to complete therapy may be probative of a best-interest determination, but here the Department did not present evidence regarding Mother's alleged need for therapy or evidence indicating that her failure to complete therapy would have any impact on the children's best interests. *In re E.J.C.*, No 04-23-00519-CV, 2023 WL 7367772, at *6 (Tex. App.—San Antonio Nov. 8. 2023, no pet.) (mem. op.); *see also In re D.B.T.*, No. 04-14-00919-CV, 2015 WL 1939072, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (holding a parent's failure to complete a service is not probative of the child's best interest when the Department fails to identify the need for the service).

Chavez's testimony that Mother stayed in contact with the Department throughout the case indicates Mother cooperated and facilitated the Department's close supervision. The Department presented no evidence to the contrary.

We recognize Mother's failure to complete therapy is probative of the best-interest determination and may weigh in favor of termination. Nevertheless, Mother's willingness to facilitate the Department's close supervision weighs against termination.

### (C) The Evidence is Insufficient to Support the Trial Court's Best Interest Findings

Here, it appears the trial court terminated Mother's parental rights because it determined the children might be better off with Foster Mother or some other adoptive home. However, "[t]he best interest standard does not permit termination of parental rights merely because a child might be better off living elsewhere." *In re E.J.M.*, 673 S.W.3d 310, 332 (Tex. App.—San Antonio 2023, no pet.) (en banc) (alterations omitted). In its oral pronouncement, the trial court stated this case "is a story of economic hardship." From its oral pronouncement, it appears the trial court is concerned that Mother does not have the financial means to care for the children. While we understand the trial court's concern, the Family Code expressly states a parent's economic disadvantage does not constitute clear and convincing evidence that termination is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(c)(2). Thus, the evidence relied on by the trial court regarding Mother's economic hardship is legally insufficient to support its finding that termination of Mother's parental rights is in the children's best interests.

We recognize it is in the children's best interests to be in a home where they can be properly cared for with appropriate housing, nutrition, and medical care. Despite Mother's economic hardships, there was no testimony that Mother would be an inadequate caregiver or that she poses a danger or threat to the children. Although Mother was subject to two evictions, she was not evicted either time because she was able to pull together the resources she needed to prevent the

evictions. Mother does not have transportation but has relied on Foster Mother for help with transportation. This may be concerning if it were apparent this aid would imminently cease. But Foster Mother testified she would continue to provide transportation, help with school and medical care, and be a resource for Mother. This evidence is undisputed. Foster Mother has committed to providing Mother with support to raise the children. The economic concerns the trial court expressed are partially based on evidence of past conduct, but the testimony conclusively established Mother has been able to meet her financial obligations to maintain stable housing, and she has continued to maintain stable employment. Further, with the resources available to Mother—including Foster Mother's help—the evidence does not support a finding that Mother will be unable to care for the children's physical and emotional needs. It was the Department's burden to prove by clear and convincing evidence that termination of Mother's parental rights is in the children's best interests. On this record, the Department has failed to meet its burden.

Having reviewed the record and considered all the evidence under the appropriate standards of review, we conclude the trial court could not have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, the trial court erred when it based its decision on legally insufficient evidence. Mother's sole issue is sustained.

## CONCLUSION

We reverse the portion of the trial court's Order of Termination that terminated Mother's parental rights to the children and render judgment denying the Department's petition for termination of Mother's parental rights to the children. We affirm the Order of Termination in all other respects and the trial court's unchallenged conservatorship ruling remains intact.

Irene Rios, Justice